Burt *v.* Horner.

5b 501
14ap422

SAME TERM.      *Mullett, Sill, and Marvin,* Justices.

BURT *vs.* HORNER and others.

The undertaking of the guarantor of a promissory note is not within the statute of frauds; and if made upon a good consideration, is valid, although no consideration be expressed.

In an action upon a guaranty expressing no consideration, parol proof of the consideration is admissible, to supply the defect in the written instrument.

The legal effect of a guaranty in these words, endorsed on a promissory note, "We guaranty the collection of the within note," is the same as if it had been said, "We guaranty the collection of the within note *by due course of law.*"

The obligation assumed by the holder, in accepting a note with such a guaranty endorsed upon it, is that in case the note is not paid at maturity, he will, within a reasonable time, and with due diligence, institute legal proceedings against the maker, for the collection of the note, and prosecute them to consummation, without delay.

This is a condition precedent to the liability of the guarantor, and imposes upon the guarantee the duty of diligence not only in the manner of conducting the prosecution, but also in the institution thereof.

Where there is no dispute about the situation and circumstances of the parties, and no question as to the steps which have been taken or omitted by the guarantee, against the principal debtor, the question of due diligence is a question of law.

An omission to sue the maker of a note, for seventeen months after its maturity, is such laches on the part of the holder as will discharge the guarantor.

And a neglect to sue the maker will not be excused by the fact that he has no property within this state. If he resides out of the state, at the time of giving the note, and continues to reside there, and has property at the place of his residence, it is the duty of the holder to prosecute him there, *before he can* have recourse to the guarantor.

THIS was a motion by the defendants to set aside the report of a referee. The defendants were parties doing business at

Williamsville in Erie county, and the plaintiff a merchant doing business in Buffalo. The defendants were the holders of a promissory note payable to them or bearer, one year after date, for $358,61, made by Benjamin Troule, and dated "Bertie, Feb. 17, 1845." The note was not, by its terms, payable at any particular place. On the 19th of Sept. 1845, an agreement was made by the parties to this suit, by which the defendants were to purchase of the plaintiff merchandise to the amount of the note, and for the price the plaintiff was to take the note, with the defendants' guaranty of its collection. This agreement was carried into effect, the goods delivered to the defendants, and the note delivered to the plaintiff, with a memorandum in the following form written on the back and signed by the defendants : "Buffalo, Sept. 19, 1845. We guaranty the collection of the within note." Troule, at the time the note was made, was and has been ever since a resident of Bertie, Canada West, where the note was dated, about ten miles from Buffalo. After the note matured, and on the 5th of March, 1846, he paid on the note $51, and on the 7th of March $74. These sums were paid at the plaintiff's store in Buffalo, by Troule in person, and were endorsed on the note, of the respective dates before mentioned. The plaintiff's clerk, who proved these payments, also testified that he subsequently saw Troule once in Buffalo and once at his residence in Canada. It was also proved that during the two years preceding the hearing of this cause before the referee, (Sept. 1848,) Troule was " very frequently at Buffalo," and that he was possessed of real and personal estate in *Bertie* worth $12,000.

The plaintiff proved a judgment on the note against Troule, recovered by default for want of plea, in the recorder's court of the city of Buffalo, on the 26th day of July, 1847, and that an execution had been issued on this judgment to the sheriff of the county of Erie and returned unsatisfied. The referee reported in favor of the plaintiff for the amount due on the note, and the defendants now moved to set aside his report upon the following grounds, the same points having been made before the referee.

1. The guaranty was void by the statute of frauds. It ex-

pressed no consideration, and the parol proof of the consideration was inadmissible to supply the defect in the written instrument. 2. The plaintiff was guilty of laches in neglecting to sue the maker of the note for nearly seventeen months after its maturity, and the defendants were thereby discharged. 3. The plaintiff was bound to go to Canada and sue Troule there, before the defendants could be made liable on their guaranty.

*J. T. Williams,* for the defendants.

*E. Ford,* for the plaintiff.

*By the Court,* SILL, J. 1. The objection that the defendants' undertaking was within the statute of frauds is disposed of by the case of *Johnson* v. *Gilbert,* (4 *Hill,* 178.) The same case, by necessary implication, shows that the objection to the parol testimony, disclosing the character of the transaction, between the defendants and the plaintiff, is also untenable. A written promise, not in conflict with any law, may be upheld when there is a good consideration for it, although it does not appear in the writing itself. It may, in such cases, and this is one, be supported by parol evidence of a consideration, when such proof is consistent with the written instrument.

2. The legal effect of the defendants' obligation is the same as if it had been written in the following form : "We guaranty the collection of the within note *by due course of law. ( Cumpston* v. *McNair,* 1 *Wend.* 457. *Curtiss* v. *Smallman,* 14 *Id.* 231.)

The obligation assumed by the plaintiff upon accepting this note and guaranty was, that in case the note was not paid at its maturity, he would, within a reasonable time, and with due diligence, institute against Troule legal proceedings for the collection of the note, and prosecute them, without delay, to consummation. This was a condition precedent to the liability of the defendants upon their guaranty, and imposed upon the plaintiff the duty of diligence not only in the manner of the prosecution, but also in its institution.

It was said on the argument, that diligence is a mixed ques-

tion of law and fact, and was settled in favor of the plaintiff by the finding of the referee, and on this point we are referred to *Backus* v. *Shipherd*, (11 *Wend.* 634,) and *Thomas* v. *Wood*, (4 *Cowen*, 173.) Such was the doctrine there intimated as applicable to those particular cases; *for the existence of the facts* which it was contended excused the delay in those cases, was a question not decisively settled by the evidence. But where there is no dispute about the situation and circumstances of the parties, and no question as to the steps which have been taken or omitted by the plaintiff, against the principal debtor, the question of due diligence is, by all the authorities, regarded as one of law. In this case there is no dispute about the facts bearing upon the points under examination. The maker of the note lived in Canada from the time it was made until the hearing. He was twice at the plaintiff's store within one month after it fell due; and was afterwards, and up to Sept. 1848, "very frequently in Buffalo." It must also be assumed, from the place where the note is dated, and other unquestioned facts in the case, that the plaintiff knew, when he received the note, that the maker lived in Canada. Here then is a delay of all proceedings against Troule from the 20th of February, 1846, until July, 1847, a period of nearly or quite seventeen months, sought to be excused upon the ground, solely, that he was a non-resident, and that having no property within the jurisdiction of the courts of this state, an earlier prosecution would not have secured the collection of the debt.

In *Moakley* v. *Riggs*, (19 *John.* 69,) the court held that the omission for seventeen months to prosecute the maker of a note, discharged the guarantors. The same question came up again in *Kies* v. *Tifft*, (1 *Cowen*, 98,) and was again decided the same way; the delay, however, in the latter case, being for a much shorter period.

It is said by the plaintiff's counsel, that these cases are in conflict with the later one of *Thomas* v. *Wood*, (4 *Cowen*, 183.) The defendant in that case guaranteed the collection of a bond and mortgage given February 8, 1809, to secure the payment of $1200 with interest. The interest was to be paid

annually, on the 1st day of March in each year, and the principal in three instalments on the 1st day of March in the years 1814, 1818, and 1822.   The mortgagor failed to make the payment falling due on the 1st day of March, 1814, as well as prior instalments of interest.   The plaintiff did not sue him on the bond until after the May term of the supreme court in 1814, but perfected a judgment at the next term, and failing to collect the money, foreclosed the mortgage and sold the land the next December.   It appeared that the principal debtor was wholly insolvent in and prior to March, 1814.   The proceeds of the land paid what was due at the time of the sale, and part of the instalment falling due in 1818.   Immediately after the latter became payable, a new execution was issued on the judgment against the principal debtor and returned unsatisfied, and the defendant was then prosecuted on his guaranty.   It is to be observed, that in the case cited it was the instalment of 1818, not that of 1814, the payment of which the defendant was resisting.   The first had already been paid out of the property of the principal debtor, and the defendant was insisting that he was discharged, not by reason of any want of diligence, in proceeding against the principal in 1818, but because the plaintiff had not used the utmost possible dispatch, in collecting the payment falling due four years before, and for which no claim was made upon him.   The case decides that suffering the May term to pass without suing the principal debtor, on the first instalment, it appearing that this delay could not by possibility prejudice the defendant, did not discharge him from liability upon the second instalment, in reference to which there was no pretence of laches.   This is really the point in the case, though much was said aside from it.   And when the learned judge said that certain remarks in *Kies v. Tifft* were *obiter*, he did not perhaps reflect, that much of what he was then saying was subject to the same criticism.

But it was not intimated even there, that an indefinite delay could be excused by any circumstances.   The doctrine of the former cases is not questioned, but fully recognized.   It is simply and truly said that they were not applicable to the case

of *Thomas* v. *Wood.* Mr. Justice Woodworth, in the latter case, remarks, " whatever may be the effect of letting a term pass, there is *no doubt* that seventeen months' delay would discharge from the guaranty." Mr. Justice Sutherland says, " the expression that a term should not be permitted to pass, is to be taken in connection with the facts of those cases. There *was great and unnecessary delay* in both." The most that can be claimed even from the *obiter* remarks in *Thomas* v. *Wood* is, that suffering a term to pass which occurs two months after the demand matures, may, under peculiar circumstances, be reconciled with reasonable diligence in the prosecution of the principal; though this is not a question really presented by the facts of that case. It is not perceived that these several authorities are in conflict. They all alike have been constantly cited as consistent authority for showing that the guarantee must be early and diligent in prosecuting the principal debtor if he would retain the liability of his guarantor. (*See* 5 *Wend.* 509; 1 *Id.* 461; 21 *Id.* 258.)

In *Backus* v. *Shipherd*, the note was transferred and guaranteed after it matured. Four months after the transfer judgment was obtained against the maker. Some facts being controverted in that case, they, with the question of due diligence, were submitted to the jury, and their finding in favor of the plaintiff was sustained by the court. That the rule by which the question of due diligence is to be tried should be qualified and relaxed, in some degree, where the guaranty is made after the demand is due, need hardly be mentioned. But if this were otherwise, the case of *Backus* v. *Shipherd* would not sustain the decision of the referee in this case.

The question is not whether the defendants have been injured by the delay, but whether the plaintiff has performed his contract—the condition precedent to his right to call on them. A compliance on his part with the terms of the guaranty is indispensable. Parties may agree upon such terms as they please, as a condition of liability, and the courts cannot substitute other stipulations for them. None of the cases profess to do this; but where there has been delay the courts have, in

Burt *v.* Horner.

some instances, held it to be consistent, under the circumstances disclosed, with reasonable diligence, and hence that there was a performance of the condition precedent.

None of those circumstances which have been supposed to make a short postponement of the prosecution of the principal consistent with reasonable diligence, are found in the present case. Troule was twice at the plaintiff's store in Buffalo after the note fell due; and the fact of his non-residence, so far from excusing the plaintiff from proceeding against him there, required him promptly to embrace these opportunities for complying with the conditions of the guaranty, and of protecting the interests of the defendant, which had been confided to him, and the duty of maintaining which he had assumed.

But if the omission to proceed against Troule there can be made consistent with the plaintiff's obligation, how can he get over the subsequent delay of sixteen months? It is said he did not know that Troule had been in Buffalo. But we find him making no exertions to inform himself how this was. And even if such exertions had been made, a failure on his part to learn the facts as they really existed, would be a very questionable excuse for his negligence. His duty was a very plain one; that is, to place process for Troule in the hands of the sheriff, which would have protected him in any event, and probably in the present case have secured a much earlier judgment. There is, if possible, still less force in the suggestion that the plaintiff was not bound to proceed against the maker of the note because he had no property within reach of the process of the court. This is striking at the very contract itself, and asking us to make new stipulations between the parties. The only reason why a *guarantor is ever liable* on a contract like this, is that the principal debtor has not property within the reach of the process of the court to satisfy his obligation; and the argument of the plaintiff's counsel, carried out, would dispense with prosecution in every such instance, and substitute for it evidence of the maker's insolvency. Here neither the residence, pecuniary ability, situation of their property, nor any other circumstances of the parties to this paper have changed

since the guaranty was made.   The parties to the suit under-
stood then what would be the result of a suit against the maker
in Erie county, as well as they know it now.   The defendants
having then all the light they have now, exacted, and the plain-
tiff assumed, the responsibility of an early and diligent prose-
cution of Troule, as a condition precedent to their liability; and
it does not lie with him now to say that they exacted, and he
undertook to perform, a mere idle ceremony.   They had a right
to make such a contract, and the court cannot assume to make
one in its stead, which might be supposed more practical and
sensible.

It was contended, on the argument, that if the defendants
had not been prejudiced by the delay, it constituted no defence,
and that the burden of showing that they were prejudiced lay
on them.   The point is partially involved and has been suffi-
ciently examined in the consideration of those which have pre-
ceded it.   It only remains briefly to advert to the authorities
cited to sustain it.   They are all, (with a single exception
which is noticed below,) decisions upon the ordinary contract
of suretiship, and are not applicable to contracts of guaranty.
The distinction between them has been already sufficiently
indicated in stating the character of the obligation under con-
sideration.

In *Backus* v. *Shipherd*, (11 *Wend.* 635,) Mr. Justice Nelson
says, " a proceeding to judgment and execution is at least prima
facie a compliance with the contract.   If *beyond this* there
was negligence, and more than was done might reasonably
have been done to collect the debt, and a loss ensues, *it lies on
the defendant* to show the loss, and that it was occasioned by
such negligence or omission."   These remarks, a reference to
the case will show, as indeed the extract itself shows, were
not intended to apply to a question of diligence in commen-
cing a suit.   That question had already been examined by the
learned justice, and disposed of.   What he here said referred to
the exertions and diligence which the plaintiff was bound to use
to secure the debt, after he had duly perfected a judgment.   In
that case the judgment against the principal debtor was re-

covered in a justice's court, and the guarantor objected that a transcript had not been filed in the county clerk's office, and an execution issued to the sheriff. The remarks of the judge, quoted above, were made in discussing this point; and he held that the guarantor was not discharged by this omission, unless it was shown that these steps would have secured the collection of the debt. It is hardly necessary to say that they have no application to the present case.

Thus far the examination has proceeded upon the assumption that the plaintiff could comply with the conditions of the guaranty by prosecuting Troule in this state. We think, however, he was bound to proceed against him in Canada. *White* v. *Case*, (13 *Wend.* 543,) is cited as an authority the other way. In that case, when the note was made and when the contract of guaranty was entered into, the parties to both contracts resided in this state, and the maker left it about the time the note matured. It was held, under the circumstances of that case, that the plaintiff was not bound to follow the principal debtor to another state and sue him there. It is said there that the guaranty implied not only an obligation that the maker was able to pay, but that he would be in a situation to be sued in the state *where the contract was made*. The plaintiff's counsel understands the court as referring, in these remarks, to the place where the contract of guaranty was made. We do not think this is what was intended; but that reference is had to the contract of the party who is to be sued—the maker of the note. When he resides in one state and the guarantee in another, it would be a strange construction of a simple contract of guaranty to hold it to imply that the maker of the note should change his place of residence and remove to that of the guarantee. That this was not meant, is shown by other remarks of the learned judge in the case referred to. " The term collection," he says, " is alone equivocal, and should receive an interpretation in reference to the subject matter of the contract, and *the situation or condition of the maker*." Such we deem a reasonable and correct rule of interpretation, to be applied to the contract in this case. This note was dated in

Canada. The maker resided there when it was made, and when the plaintiff received it, and when he assumed to use the proper means to collect it. Troule's property is presumed to be at the place of his domicil; indeed, it is proved to be there, and that he is abundantly able to pay this demand. With all these facts in view, at the time the contract between the parties to this suit was made, what was it understood by them that the plaintiff had undertaken to do, by agreeing, to collect the note of the maker "by due course of law?" Was it supposed that the duty would be performed by a nugatory proceeding in the recorder's court of the *city of Buffalo?* Troule's person was not liable to arrest, and his property was not within reach of the process of the court, and they must have foreseen that a suit here would result in nothing but useless expense. Giving the contract a construction which will make the defendants liable, upon the performance of this idle ceremony, would change its character, and make it virtually a guaranty of payment, instead of a guaranty of collection—a contract which the parties were competent to make for themselves, if they had so intended. The terms upon which the note was received by the plaintiff, imposed upon him the duty of looking in good faith to the interests of the defendants in his attempts to collect the debt of the maker. He was bound, for this purpose, to do for them (the circumstances remaining such as the parties contemplated when the guaranty was made) what a discreet and careful man would have done in this respect for himself. This we think required the plaintiff to prosecute Troule where his residence and property were—before calling upon the defendants; and for this reason the suit cannot be maintained.

Although we have found no reported case presenting this precise question, still there are authorities which we think justify the distinction we have made between this case and that of *White* v. *Case.* It has been held that in order to fix an endorser of a promissory note not payable at a particular place, it was not necessary to demand it of the maker who, *after it was made and before it matured,* removed from the state; but that a demand at his last place of residence *in this state was*

---

*sufficient.* (*Cumming* v. *Fisher, Anthon's N. P.* 1, *and notes. And see a reference to an unreported case,* 14 *John.* 117.) But where the maker resides out of the state when the note is made, the demand must be made at his residence. (*Gilmore* v. *Spies,* 1 *Barb. Sup. Court Rep.* 158.) The principle which distinguishes those cases we think applies to this, and distinguishes it from that of *White* v. *Case.* The case of *Shultz* v. *Palmer,* (11 *Wend.* 367,) bears somewhat, though more remotely, upon the same point.

The motion to set aside the report of the referee must be granted; the costs to abide the event of the suit.

