Van Derveer *vs.* Wright.

The act of May 2d, 1835, authorizing an assignee for a valuable consideration, of a note, &c. to sue thereon in his own name when the assignor is dead, if there be no personal representatives of the assignor, or they refuse to sue, does not cover cases of mere gifts, or assignments founded upon natural love and affection, between near relatives by blood.

A promissory note payable to A. or order can not be assigned by parol ; and if not endorsed by A., nor transferred, except by a guaranty indorsed thereon by him, a subsequent holder must bring himself within the statute, before he can sue the guarantor in his own name ; particularly upon a conditional guaranty, which is properly a contract between the immediate parties thereto.

A guaranty that a demand is collectable is a conditional promise, binding upon the guarantor only in case of diligence.

After the guarantor of a note has been discharged, by the laches of the holder, there is no moral obligation to pay it, and he can not be again made liable, even upon an express promise.

Motion to set aside the report of a referee.   On the 2d of August, 1836, one James B. Reid made his promissory note as follows :   " Nine months after date, I promise to pay D. Wright or order, at the Montgomery County Bank, two hundred and fifty dollars value received, with interest.

August 2, 1836.                    James B. Reid."

On the 28th September following. Wright, the payee, for a valuable consideration, transferred the note to John Van Derveer, senior, father of the plaintiff, and executed a guaranty in writing indorsed on the note, in these words :   " I guaranty the collectability of the within note to John Van Derveer, for a valuable consideration.   September 28, 1836.    D. Wright."

John Van Derveer, senior, died in 1839, but before his death he divided his property among his children, and this note fell to the plaintiff.   Each of Van Derveer's children, the plaintiff among the rest, executed to their father a bond, on receiving his property, conditioned to pay him an annuity of five hundred dollars during his life.   This, in addition to love and affection,

was the consideration for the assignment to the plaintiff of the note in question. John Van Derveer, senior, died as before stated, in 1839, intestate, and no administrators were ever appointed on his estate.

The plaintiff in this cause, in May term, 1840, recovered a judgment in the supreme court, on this note, against the maker, for $169,96 damages, besides costs, and an execution was duly issued and returned *nulla bona,* &c. It was also admitted that the maker was discharged under the bankrupt act, in 1842. It was proved that after the note became the property of the plaintiff, the defendant requested the witness to tell the plaintiff not to prosecute the note, for he had made arrangements with Reid to pay it. This testimony was objected to, but admitted by the referee. It was also proved that in September, 1842, after the judgment was obtained against Reid, the defendant Wright paid fifty dollars to the plaintiff's attorney, to be applied on the judgment, after Reid obtained his discharge, saying that he supposed he would have it to pay. There was conflicting evidence given as to the pecuniary responsibility of Reid, from the time the note became due until judgment was obtained. The testimony of Reid, who was examined on the part of the defendant, was, that he could not have paid all his debts during that period; but there were times during that period in which he could have done so, and that he thought this note could have been collected had it been sued when it became due. At that time, and afterwards, he was doing extensive business as a merchant in Amsterdam, where all the parties resided.

The declaration was on the common counts, and also on a special count upon the guaranty, showing the plaintiff's right to sue in his own name, and averring that since the guaranty aforesaid the note had not been collectable of the maker thereof. The defendant's counsel insisted that the plaintiff could not recover in his own name; as the guaranty was to his father, and not to him; that due diligence had not been shown, to collect of the maker, and that it was manifest from the evidence that if due diligence had been used, the note would have been collected of the maker. The defendant also objected to the evi-

Van Derveer *v.* Wright.

dence of his promise to pay, and of his request not to sue the maker, as inadmissible under the pleadings. The referee overruled these objections, and reported in favor of the plaintiff, $148,12, the balance due on the note.

*D. Wright*, in person, now moved to set aside the report.

*D. P. Corey*, contra.

HAND, J. By the statute, (*Laws of* 1835, *ch.* 197,) an assignee " for a valuable consideration," of a note, &c., here the assignor is dead, if there be no personal representatives of the assignor, or they refuse to sue, may sue in his own name. The assignment must be for a " valuable consideration" to bring it within this act. The use of the word " valuable," in this place, no doubt was intentional, and has meaning. It was not intended to cover cases of mere gifts. Such a disposition of dead men's estates should at least come to the notice of the executor or administrator. The difference between a valuable or meritorious consideration, and a voluntary or good one, is well understood. The former is founded on something deemed valuable, as money, goods, services and marriage. A good or voluntary consideration is founded upon natural love and affection between near relatives by blood. (4 *Kent*, 464, 465. *Hil. El. of Law*, 76. 1 *Comyn on Cont.* 8. 4 *East*, 455. 12 *Pet.* 241. 11 *Wheat.* 199. 8 *Cowen*, 406. 3 *Id.* 537. 4 *Wend.* 303. 2 *Brock. Rep.* 132. 8 *Paige*, 165. 2 *Taunt.* 69.) The words have been used in this sense in several instances, in our statutes. (2 *R. S.* 134, §§ 1, 3, 4. *Id.* 137, § 4; *and see revisers' notes to these sections.*) Courts of equity will not enforce a mere gratuitous gift or moral obligation. (*Colman* v. *Sarrell*, 1 *Ves. jr.* 50. *Tuffnall* v. *Constable*, 8 *Sim.* 69. *Flower* v. *Martin*, 2 *Myl. & Cr.* 459. *Story's Eq.* §§ 706, 706 *a*, 787, 793 *a*, 973, 987.) In this case the children gave bonds to the payee, each to pay him $500 annually for life. But whether these were given in consideration of the personal property is not stated. It might have been for real estate. The testimony is,

that this note was given to the plaintiff by his father.   If this
was so, this action can not be sustained.   It could be assigned
by parol; but as it was payable to the defendant or order, and
not endorsed by the defendant, nor John Van Derveer deceased,
or transferred, except by this guaranty, the plaintiff must bring
himself within the statute, before he can sue in his own name;
particularly upon a conditional guaranty which is properly a
contract between the immediate parties thereto.   (*Lamourieux*
v. *Hewit*, 5 *Wend*. 307.   *Watson's Ex'rs* v. *McLaren*, 19
*Id.* 557.   *S. C.* 26 *Id.* 425.   *Miller* v. *Gaston*, 2 *Hill*, 188.)

But I think there is a less technical objection to the report.
The note was dated August 2d, 1836, became payable on the
5th of May, 1837, and was transferred, with the guaranty, on
the 28th of September, intermediate.   The note could have
been collected at any time after the 5th of May, 1837, and in
the years 1838 and 1839.   A guaranty, that a demand is col-
lectable, is clearly a conditional promise, binding upon the
guarantor only in case of diligence.   (*Loveland* v. *Shepard*,
2 *Hill*, 139.   *Curtis* v. *Smallman*, 14 *Wend.* 231.   *Moakly* v.
*Riggs*, 19 *John.* 69.)   It is not like an indorsement, where the
indorser is primarily liable, subject to be discharged by the
laches of the holder; not on the ground of non-fulfilment of the
contract, but because of the supposed injury to the indorser by
such neglect.   Nor is it like a guaranty of *payment*, which,
like that of an indorsement, is similar to a new note, but is pure-
ly a conditional promise, becoming absolute on the performance
of the condition precedent.   (*White* v. *Case*, 13 *Wend.* 543.)
There is no doubt but that the neglect or delay in this case
was an entire failure on the part of the plaintiff to fulfil the
condition, and prevents a recovery unless the defendant has
caused that delay, or has taken some other step which pre-
cludes him from making this objection.   But I can not find that
he had any connection with the matter from the time he gave
the guaranty, until as late, certainly, as the fall of 1838, and
probably not until after Van Derveer's death.   Nor have I been
able to find any express promise on the part of the defendant
to pay it.   He remarked that he expected to have to pay it,

Van Derveer *v.* Wright.

and he, or some one through him, paid $50.  He also, at one time, desired it might not be prosecuted.  But all this was long after he was fully discharged by the neglect of the holder. Had he made an express promise, I am inclined to the opinion that the result would have been the same.  A moral obligation will support an express promise ; but here there was no moral obligation.  As the matter then stood, it was the same as though he had assigned the note at the risk of the assignee. His contract was performed.  The debt had been lost without his fault and in violation of the condition in his contract; and his promise, after that, was without consideration ; and besides, it was to pay the debt of another.  This is not like a waiver of a forfeiture or laches.  It is not a case of forfeiture, but one of mere contract, with a condition precedent which must be performed before any right of action accrues against the defendant. (*And see Stafford v. Bacon,* 1 *Hill,* 532 ; *Manrow v. Durham,* 3 *Id.* 591 ; *Tibbits v. Dowd,* 23 *Wend.* 379 ; *Eastwood v. Kenyon,* 11 *A. & E.* 438.)  In *Eastwood* v. *Kenyon,* Lord Denman approves of the reporter's note in *Wennall* v. *Adney,* (3 *Bos. & Pull.* 249,) "that an express promise can only revive a preceding good consideration which might have been enforced at law through the medium of an implied promise, had it not been suspended by some positive rule of law ; but can give no original cause of action if the obligation on which it is founded never could have been enforced at law, though not barred by any legal maxim or statute provision."  And indeed the promise of a certificated bankrupt must be express, distinct and unequivocal.  (*Fleming* v. *Hayne,* 1 *Stark. Rep.* 371.)  Here, there was not a promise that could be enforced at law as the case then stood.  The defendant never received any consideration for any new promise, and the old consideration was past and executed ; and besides, if a new promise existed, it was not counted upon in this case.  (*Stafford* v. *Bacon, supra.*)

The report must be set aside.

PAIGE, P. J. concurred.

WILLARD, J. The act of May 2, 1835, relative to voluntary assignments of choses in action, (*Laws of* 1835, *p.* 229,) is an answer to the objection to the plaintiff's right to sue in his own name. By that statute, it is enacted that the assignee or assignees for a valuable consideration of any bond, note or other chose in action, which have been or may hereafter be assigned, if the assignor be dead and there be no executors or administrators appointed upon his or their estate, or if such executors or administrators have no interest in the things so assigned, or shall refuse to prosecute for the same, may sue and recover in his, her or their own name or names, upon bonds, notes and choses in action." The assignment of a chose in action need not be by a writing under seal; a delivery of it, for a good and valuable consideration, is sufficient. (*Prescott* v. *Hill,* 17 *John.* 284. *Briggs* v. *Dow,* 19 *Id.* 95.)

The obligation of the defendant, upon his guaranty, was in legal effect, that he would pay the note, provided it could not be collected of the maker, after using due diligence, by process of law to collect it of him. In general, a party who suffers a term to elapse without prosecuting the maker is guilty of laches, and loses his remedy against the guarantor. (*Moakly* v. *Riggs,* 19 *John.* 69. *Kies* v. *Tifft,* 1 *Cowen* 98. *White* v. *Case,* 13 *Wend.* 543. *Eddy* v. *Stanton,* 21 *Id.* 255. 5 *Id.* 307. *Loveland* v. *Shepard,* 2 *Hill,* 139. *Cumpston* v. *McNair,* 1 *Wend.* 457. *Curtis* v. *Smallman,* 14 *Id.* 231. *Thomas* v. *Woods,* 4 *Cowen,* 173. *The People* v. *Jansen,* 7 *John.* 332.) The remedy, however, against the guarantor, will not be impaired, if the debtor was insolvent, and so continued, after the guaranty, and up to the commencement of the suit; nor, if the delay in prosecuting the principal debtor is at the instance of the guarantor. In the first case, the guarantor suffers no loss by the delay; and in the second he can not be permitted to turn an indulgence granted at his own solicitation, into a weapon of defense. (*Thomas* v. *Wood.* 4 *Cowen,* 173.)

The plaintiff claims that he has a right to recover, upon the ground that the omission to proceed against the principal so as to fix the defendant as guarantor, was occasioned by the request

of the defendant; and, also, that the defendant, with full knowledge of the plaintiff's laches, paid fifty dollars towards the judgment against the maker, recovered on the same note. The defendant, on the hearing before the referee, objected to the evidence as to the defendant's requesting the plaintiff not to sue, "*as irrelevant and improper.*" The proof of the payment of fifty dollars on the note was not objected to, at all. This objection is now, for the first time, extended to both branches of the evidence, and is expanded into the four following heads: 1st, as not being the contract declared on; 2d, because there was no consideration for it; 3d, because the first contract was in writing and can not be varied by parol; and 4th, because no new contract was proved.

The first answer to the foregoing points is, that none of them were taken before the referee, either in substance or in form, as they have been urged here. The point actually taken before the referee was indefinite, and did not show wherein the proof offered differed from the pleadings. The party who takes an exception must be so specific as to remove all doubt as to his meaning, and to apprise his adversary and the court of the precise point of his objection. The court are under no obligation to modify the propositions of counsel, so as to make them suit the case, but may dispose of them in the terms in which they are proposed. (*Reab* v. *McAllister*, 8 *Wend.* 109, 111. 2 *Cowen & Hill's Notes*, 790, *and cases.*) The practice in this state is too well settled to require an examination of the cases.

The second answer is, that though the plaintiff might have declared against the defendant specially as guarantor, he was not bound to do so. As the transfer of the note by the defendant was shown to be for a valuable consideration, and so admitted to be, on its face, it was properly given in evidence under the money counts. (*Chit. on Bills, Springf. ed. of* 1836, *p.* 595, *et seq.*) In *Butler* v. *Haight*, (8 *Wend*, 535,) in an action against a defendant, the payee of certain notes, which he had transferred and guarantied in terms like the one under consideration, this court held, that the notes and guaranty were admissible as evidence under the common counts, they "being

expressed to be made for value received." Even when the count is special, the better opinion is, that proving part payment, or a promise, or other equivalent act of waiver, either before or after suit brought, with knowledge of the laches, will satisfy all or any of the averments. (*Per Cowen, J. in Tibbetts v. Dowd,* 23 *Wend.* 384. *Williams v. Mathews,* 3 *Cowen,* 252, 262.) That the act of waiver is equally available, whether done before or after suit brought, was held in *Hopley v. Dufresne,* (15 *East,* 275.) You may, therefore, in declaring against an indorser, aver demand, notice, &c. and satisfy it by proving waiver. If this may be done when the declaration is special, much more may it be so under the common counts, where no averments of demand, notice, &c. are made. There is nothing in those objections, and the proof was properly admitted by the referee.

We are thus brought to the grounds on which the plaintiff claimed a right to recover, notwithstanding his laches in not charging the defendant by proceeding without delay to collect the note against the principal. First, as to the defendant's having occasioned the delay. It was proved that the defendant sent word to the plaintiff, requesting him not to prosecute the note, for he, the defendant, had made arrangements with Reid, the maker, to pay it. This conversation took place about two years after the note became due, and of course after the defendant was discharged by the plaintiff's laches; unless those laches were occasioned by him, or were waived. The defendant was a lawyer of distinction, and knew his rights. It is evident that he knew at that time that the note had not been sued. Whether in truth he had made any arrangements with the maker to pay it, is immaterial. The plaintiff had a right to rest on the defendant's assurances. He might well have supposed that the defendant was indemnified by the maker, and intended to pay it. It affords also persuasive evidence that the prior delay had been caused or sanctioned by him. The referee was warranted in finding the fact from the evidence in the cause, that the plaintiff's delay in suing was by the defendant's own request.

Second, as to the defendant's payment of fifty dollars. This payment was made by the defendant to the attorney of the

Van Derveer *v.* Wright.

plaintiff after he had obtained judgment against the maker. As the plaintiff's attorney did not receive the note for collection until February, 1840, nor obtain judgment till May, 1840, and as the payment of fifty dollars by the defendant was made on the 24th of September, 1842, he knew what steps had been taken. He requested the plaintiff's attorney, at the time he paid the fifty dollars, not to apply it then on the note, and not until after Reid had obtained his discharge in bankruptcy, "as he, the defendant, supposed he would have it to pay, and then Reid would be legally liable to him." The fact that in 1839, the defendant sent word to the plaintiff requesting him not to sue the note; and that at another time, about the same period, he inquired who was the owner of the note, saying, that "he expected to have it to pay," afforded evidence of waiver of the steps requisite to charge him. They also bear upon the question of knowledge.

In *Trimble* v. *Thorne*, (16 *John.* 152,) it was held that in order to recover against an indorser who had not been regularly charged as such, the plaintiff must show that the defendant, when he subsequently promised to pay, had full knowledge that he was discharged by the holder's laches. The court, said Spencer, Ch. J., did not mean to leave it to be inferred from the subsequent promise, that a regular notice had been given, or was intended to be waived. To the same effect is a dictum of Savage, Ch. J., in *Jones* v. *Savage*, (6 *Wend.* 658.) But the doctrine of those cases is shown by Cowen, J., in *Tibbetts* v. *Dowd*, (23 *Wend.* 379,) to be at variance with the current of authorities in England, for above a century, and of those of this country, as far back as they can be traced, and was expressly overruled. There are some cases which go to the opposite extreme, and in case of a promise to pay, throw on the defendant the double burthen both of proving laches and that he was ignorant of them. Such is *Kennon* v. *M'Rea*, (7 *Porter*, 175, 183, 184. *Nash* v. *Harrington*, (1 *Aikin*, 39, 42.) Chancellor Kent (3 *Com.* 113) takes the middle ground, saying, "The weight of authority is, that this knowledge may be inferred, as a fact, from the promise, under the attending circumstances,

Van Derveer *v.* Wright.

without requiring clear and affirmative proof of the knowledge." The cases of *Lundie* v. *Robertson,* (3 *East,* 231,) *Hopkins* v. *Liswell,* (12 *Mass. Rep.* 52,) *Burd* v. *Hillhouse,* (7 *Conn. Rep.* 527,) and numerous others, sustain the doctrine of Chancellor Kent. The referee, therefore, was authorized to find, from the payment of fifty dollars by the defendant in 1842, under the attending circumstances in the case, that the defendant had knowledge of the plaintiff's laches, and consequently that the payment was a waiver of the requisite steps to charge him as guarantor, and a ratification of the contract. All the cases have been so recently and elaborately reviewed by Judge Cowen, in *Tibbetts* v. *Dowd,* (*supra,*) that it would be a waste of time to go over them. In most of the cases, where a demand and notice have been waived, the action has been brought against the defendant as indorser. But in *Backus* v. *Shipherd,* 11 *Wend.* 629,) and *Burd* v. *Hillhouse,* (7 *Conn. Rep.* 523,) the defendant was sought to be charged on a guaranty, similar to the one in this suit, in both of which it was expressly adjudged that the same doctrine of waiver applies that prevails in actions against an indorser.

It is urged by the defendant that the promise, implied from the payment of fifty dollars, was without consideration and void. Bronson, J. in *Tibbetts* v. *Dowd,* (23 *Wend.* 412,) says, that as an original question, he should be of opinion, that whenever it plainly appears that there has been laches on the part of the holder, the drawer or indorser is discharged, and that a subsequent promise, though made with full knowledge, can not aid the case. But, he concedes that the rule has been settled otherwise, and whenever it becomes necessary to apply it, he should feel bound by the weight of authority. And he elsewhere observes, " that the holder may recover on proof of a promise by the indorser, with knowledge that he was not liable; not, however, on the ground that the indorser is bound by the promise, as matter of contract, for it wants consideration; but on the ground that a promise amounts to a waiver of the objection that the proper steps had not been taken to charge the indorser." There are various other cases where a party is liable on his

promise to pay, although no new consideration be shown ; such as a promise to pay a debt barred by the statute of limitations ; (*Sands* v. *Gelston,* 15 *John.* 511 ;) the promise of an infant, after he has arrived at the age of twenty-one, to pay a debt contracted while an infant, and not for necessaries ; a promise by an insolvent to pay a debt from which he has been discharged. In these cases, no new consideration is necessary to uphold the promise. The original liability forms the aliment by which it is supported. And perhaps in each case the promise may be treated as a waiver of the protection which the law interposes in their favor. A party may waive a legal requirement made for his benefit. ( *Williams* v. *Potter,* 2 *Barb. S. C. Rep.* 316.)

On the whole, I think the referee has decided the matter correctly, and his report should not be disturbed.

Report set aside.

