NEWELL and BEARDSLEY *vs.* FOWLER, ex'r, &c.

Where, upon the assignment of a bond and mortgage, the holder guaranties "the collection of all sums of money unpaid upon said bond and mortgage, with costs," it is a condition precedent to any liability of the guarantor, that the assignee shall, within a reasonable time, institute legal proceedings upon the securities, and prosecute the same with diligence to a consummation.

Nothing will excuse the party holding the guaranty from the performance of this condition, except the act of the guarantor himself. It will not suffice for such party to say it would have been of no use to prosecute.

Nor will a waiver, by the guarantor, of proceedings to foreclose the mortgage, excuse the assignee from proceeding against the mortgagor, or his estate, upon the bond.

Such a contract of guaranty imposes upon the assignee the burthen of exhausting, by legal procedings, every remedy which the bond and mortgage. give him, before the guarantor's liability will become fixed.

MOTION by the plaintiffs to set aside a nonsuit and for a new trial; ordered to be first heard at a general term. The action was brought originally against Reuben W. Fowler, the defendant's testator, in his lifetime, and was tried at a circuit court held in Ontario county, in November, 1855, before T. R. STRONG, justice, and a jury, when the plaintiffs were nonsuited. The testator died after the trial, and his executor, the above defendant, was afterwards substituted as defendant in the action. Upon the trial the following facts appeared: On or about the 15th day of October, 1837, one Asahel Kent, of Lenawee county in the state of Michigan, executed and delivered to one Malachi Loveland, of Avon, in the state of New York, his bond, conditioned for the payment of $1000, with interest annually, payable within two years from the 15th day of September next before the execution of said bond, and at the same time executed a mortgage to said Loveland to secure the payment of said $1000, and interest, as mentioned in said bond, said mortgage being upon 240 acres of land described therein, situated in Barry county in said state of Michigan; which mortgage was duly recorded on the 14th day of December, 1837. On the 16th of December, 1840, the said bond and mortgage, being unpaid, was assigned by Loveland to the said Reuben W. Fowler, the testator and original defendant. That on the

11th day of January, 1849, the said Reuben W. Fowler assigned and guarantied the said bond and mortgage to Jedediah H. Stark, by an instrument in writing indorsed upon the said bond, in the words and figures following, viz : "For value received of Jedediah H. Stark, being the amount of money unpaid upon the within bond, and the mortgage accompanying this bond, and given as collateral security for the payment of the money mentioned in the condition of said bond, I, Reuben W. Fowler, the assignee and owner of said bond and mortgage, hereby assign, transfer and set over unto said Stark, said bond and mortgage, and all my right and title therein ; and I further, for the consideration aforesaid, do hereby guarantee to said Stark the collection of all sums of money unpaid upon said bond and mortgage, with costs.    Jan'y 11, 1849.

REUBEN W. FOWLER."

That on the 9th day of October, 1852, the said Stark assigned to the plaintiffs and Erastus Wilber, the one equal undivided half of the said bond and mortgage ; and on the 22d day of December, 1854, the said Stark assigned to the plaintiffs all his interest in the said bond and mortgage.    That on the 27th day of December, 1854, the said Erastus Wilber assigned to the plaintiff Beardsley all his right, title and interest in and to said bond and mortgage.    The foregoing facts appeared as well by admissions in the answer and by allegations in the complaint which were not denied in the answer, as by evidence given upon the trial.    The complaint, among other things, contained an allegation that the land described in the mortgage in question had been, prior to the date of that mortgage and at the time of the execution thereof, and hitherto had continued to be, incumbered by mortgages and judgments to an amount far exceeding its value, and that Kent, the mortgagor and obligor, had *long since* died, leaving no property, and for that reason nothing could be collected of him or his estate upon said bond, or by foreclosure or otherwise upon said mortgage.    The answer, among other things, contained the following: "And the defendant, further answering, admits that the premises embraced in said mortgage were, at the time of its

execution and delivery of the same to said Loveland, incumber-ed far beyond its value, and that said bond and mortgage were, in the hands of this defendant, entirely worthless, which fact was well known to said Stark while this defendant held said bond and mortgage." Thomas F. Stark, a witness for the plain-tiffs, testified that in the latter part of December, 1854, he was present and heard a conversation between the defendant Reu-ben W. Fowler and the said Wilber, in which the latter asked him if he wanted him to proceed on the mortgage on the land, and that the defendant said he did not, because it was of no use; the land was of no value; it was not worth proceeding against. That Wilber told the defendant that he wanted it understood, so that the defendant should be satisfied, whether he, Wilber, should proceed or not; the defendant said his word for that; that he need not proceed against it. He said he had sent west by a man who was going to the land, and had found that it was worthless, and that it was of no use to proceed against the land. The defendant said he would take no advan-tage on that score, in any suit against him. Anna Stark, an-other witness for the plaintiffs, testified that she heard a con-versation between Wilber and the defendant, about the necessity of prosecuting the Loveland bond and mortgage, in which the defendant said he need not make any costs on the mortgage, for it was not good for any thing. The defendant said he did not want any costs made at his expense; that the bond and mort-gage were present.

After the plaintiff rested, the defendant's counsel moved for a nonsuit, upon the ground that there was no evidence that the condition of the defendant's guaranty, requiring the holder of the bond to institute proceedings for its collection, against the maker, had been complied with, and that the guarantor was discharged by laches. The justice granted the motion and non-suited the plaintiffs. There were other grounds stated on the motion for a nonsuit, but they were neither of them such as to call for any consideration, and the motion was granted solely on the above ground.

*James C. Smith,* for the plaintiffs.

*H. O. Chesebro,* for the defendant.

*By the Court,* WELLES, J. The facts established by the pleadings, in connection with the evidence, show that the premises embraced in the mortgage were, before it was executed, and have ever since continued, incumbered of record to an amount exceeding their value, and that at some time between the execution of the bond and mortgage by Kent and the commencement of the action, Kent had died insolvent, and leaving no property. Any legal proceedings, therefore, to collect the money by foreclosure of the mortgage at any time after it was given, or against Kent or his estate at the time of the commencement of the action, would probably have been ineffectual. However this may have been, it was incumbent upon the plaintiffs to have exhausted all the remedies afforded by law, to collect the money secured by the bond and mortgage, as well against Kent or his estate, upon the bond, as by foreclosure of the mortgage, before he had a right to resort to the contract of guaranty, which was, in legal effect, an undertaking that the money could be collected by due course of law. (*Burt* v. *Horner,* 5 *Barb.* 501. *Taylor* v. *Bullen,* 6 *Cowen,* 624. *Van Derveer* v. *Wright,* 6 *Barb.* 547. *Loveland* v. *Shepard,* 2 *Hill,* 139. *Moakley* v. *Riggs,* 19 *John.* 69.) There are numerous other authorities to the same effect. In some of those just referred to, the contract of guaranty was that the debt was collectable *by due process of law,* as in *Moakley* v. *Riggs.* In *Van Derveer* v. *Wright,* the language was, " I guaranty the collectability of the within note." In *Burt* v. *Horner,* it was, " we guaranty the collection of the within note ;" and in *Loveland* v. *Shepard,* the language was similar. In all the cases where the guaranty was of *collection,* without the words *by due process of law,* or any equivalent words, the construction has uniformly been the same, and that by a guaranty of *collection* was intended—collection by due process of law. In this case, if it needed any aid to bring the guaranty within the above rule of interpreta-

tion, it is found in the language employed, which is not only a guaranty of collection, &c., but the words "with costs," are added; as in *Taylor* v. *Bullen,* (*supra,*) in which Savage, Ch. J., says "the guaranty supposes that a resort to legal measures might become necessary, and the defendants engage to pay costs on any suits legally commenced." It was a condition precedent to any liability of the guarantor, that the other party to the contract of guaranty should, within a reasonable time, institute legal proceedings upon the securities assigned, and prosecute them with diligence to a consummation. It is not pretended that any thing of this kind has ever been done. Nothing will excuse the party holding the guaranty from the performance of this condition, but the act of the guarantor himself. It was a part of the contract, and it will not answer for the party to say it would have been of no use to prosecute. Conditions precedent must be strictly performed. In *Wood* v. *Worseley,* (6 *T. R.* 710,) which was an action on a policy against fire, one of the conditions was to produce a certificate of the *minister* and *church wardens,* of certain facts. The certificate was not procured; though other evidence of the facts was; and the minister, &c. refused, without cause, to give the certificate. The court of common pleas held this tantamount to a production of the certificate. But the judgment was reversed in the king's bench, after two arguments; that court holding the production of the certificate a condition precedent, and that it was immaterial that the minister wrongfully refused. It was urged by the counsel for the insured, that the condition was performed, *cy pres ;* but the court held that nothing could be substituted in place of a strict performance of the condition, according to the contract.

The question of diligence or laches on the part of the plaintiffs or their assignors is not in the case, for the reason that no attempt has been made at any time to collect the money from the principal debtor or his estate, or by means of the mortgage.

To meet this difficulty the plaintiffs contend that they have proved a waiver by the defendant's testator. The evidence touching a waiver, relates entirely to the mortgage. There was

not evidence sufficient to be submitted to the jury of any waiver excepting what related to foreclosing the mortgage. It does not appear that the testator waived proceedings against Kent, or his estate, on the bond. That was as much a part of the condition, as was the proceeding to foreclose the mortgage. It nowhere appears when Kent died, or when he became insolvent, if that were material. It is sufficient that the contract imposed upon Stark and his assignees the burthen of exhausting by legal proceedings every remedy which the bond and mortgage gave them, before the guarantor's liability should become fixed.

In my opinion the plaintiffs were properly nonsuited, and the motion for a new trial should be denied with costs.

Ordered accordingly.

Monroe General Term, March 2, 1857. *T. R. Strong, Welles* and *Smith,* Justices.]