PETER W. SCHMITZ, Appellant, *v.* MARIA L. LANGHAAR, as Executrix, etc., of JOHN LANGHAAR, Deceased, Respondent.

*Guaranty of collection — what proof of inability to collect is sufficient.*

The defendant herein set up as a counter-claim that the plaintiff had transferred to her testator a claim against the estate of James B. Taylor, by an assignment providing, among other things, that "in case the money received by me from John Langhaar cannot be collected from the representatives of James B. Taylor, I agree to pay the same to John Langhaar, with interest," and sought to recover the money so paid by John Langhaar on the ground that she had been unable to collect it from Taylor. Upon the trial it appeared that the claim was presented to and allowed by the executors of the Taylor estate, and afterwards again allowed by a receiver of the said estate, with the exception of one item which was disallowed because the article had never been delivered by the plain-

tiff ; that the estate was the subject of long protracted litigation, and that the greater part of it was thereby used up and consumed; that the defendant did not incite and could not stop the litigation; that finally a dividend of twenty-five per cent was received upon the claim by the defendant and the other creditors. *Held*, that it sufficiently appeared that the claim could not "be collected," and that the court properly allowed the defendant to recover upon the counterclaim. (GILBERT, J., dissenting.)

APPEAL from a judgment in favor of the defendant.

This case came on for trial before Mr. Justice COOKE and a jury, at Circuit, on the 29th day of April, 1880, and at the close of the testimony the court directed the jury to find a verdict for the plaintiff, counsel for both parties stipulating that the court could direct judgment for the defendant, if on consideration it was found that it was not indispensable to the right of the defendant to recover, that her testator should have proceeded to judgment and execution against the Taylor estate.

The court subsequently, on the 11th day of May, 1880, directed that the verdict for the plaintiff be set aside, and ordered judgment for the defendant, to which the plaintiff excepted.

On the 19th day of January, 1871, the plaintiff sold to the defendant's testator his claim against the estate of James B. Taylor, deceased, amounting to $7,338, for the sum of $6,650, and assigned such claim to the defendant's testator by an instrument in writing, in which he guaranteed that in case the money received by him from John Langhaar could not be collected from the representatives of James B. Taylor, he agreed to pay the same to John Langhaar, with interest. The claim was presented to the executors of James B. Taylor, and allowed by them.

A receiver was appointed of the estate, also a referee to pass upon the claims against the estate in 1874. This claim was presented to the referee and was allowed, with the exception of an item of a mirror, $1,500, which was disallowed, upon the ground that it had never been delivered, and upon the claim as allowed a dividend of twenty-five per cent was paid and received, which was the same per centage received by all creditors, even those who commenced actions against the estate, obtained judgments, and had the receiver appointed.

The defendant's claim is resisted by the plaintiff, on the ground

"that said John Langhaar failed to use due and diligent effort to collect the claim against the estate of James B. Taylor, deceased, from his representatives."

*Winchester Britton*, for the appellant.

*F. F. Marbury*, for the respondent.

BARNARD, P. J. :

The claim of the plaintiff against the defendant is undisputed. The only question is upon the legality of the counter-claim claimed by the defendant. The plaintiff had a claim against the estate of James B. Taylor. He sold this claim to the defendant's testator and in the assignment it was provided as follows : " In case the money received by me from John Langhaar cannot be collected from the representatives of James B. Taylor, I agree to pay the same to John Langhaar, with interest." The assigned claim was presented to the executor of the estate and admitted by the executors. Subsequently a receiver was appointed for the estate and a referee appointed to pass upon the claims, and then the claim in question was presented again to the referee, who ordered $1,500 deducted for a mirror not delivered to Taylor in his lifetime, but which continued in the possession of Schmitz, plaintiff. The estate of Taylor was the subject of several protracted and expensive litigations and was in great part eaten up and consumed in costs. The defendant's testator did not incite this litigation and could not stop it. At the end of the litigation there was but twenty-five per cent left for the creditors, although the estate was a large one. This seems sufficient proof that the bill " cannot be collected from the representatives of James B. Taylor."

The defendant did everything required by law. The bill was presented and proven, and became by these means of the same force as if a judgment had been obtained. No execution could issue on the judgment without leave of the court and then only for the distributive share.

While the litigation was pending which would determine the amount of such share, it would probably not have been permitted that execution should issue. Certainly no charge of negligence

can be found on an omission to apply for leave to issue execution. The creditor received his distributive share, being twenty-five per cent; he would have received no more if he had issued his execution.

It seems to me that the right to recover back the money is clear, and the judgment should, therefore, be affirmed.

DYKMAN, J., concurred.

GILBERT, J. (dissenting):

The only questions presented relate to the defendant's counter-claim. The plaintiff promised to pay the defendant's intestate the money which he had received from the latter, in case such money could not be collected from the representatives of Taylor. That is a conditional promise. It is not in form a guaranty, but in legal effect the liability of the plaintiff is the same as if he had guaranteed the collection of the demand against Taylor's executors. Counsel for both parties have so treated the contract. It became, therefore, a condition precedent to a right of action on that promise, that all proper legal remedies against Taylor's executors, to collect the demand against them, should have been prosecuted with due and reasonable diligence, and that such remedies had been ineffectual. Evidence *in pais*, that such proceedings would have been useless, it seems, does not excuse the omission of them. (*Craig* v. *Parkis*, 40 N. Y., 181; *McMurray* v. *Noyes*, 72 id., 523; *Northern Ins. Co.* v. *Wright*, 76 id., 446.) In *Newell* v. *Fowler* (23 Barb., 628) the rule above stated was applied, although the principal debtor had died. The court held the guarantor discharged, because the remedies against the principal debtor *and his estate* had not been exhausted. In the case before us, the demand, the collection of which was guaranteed, was one against executors. It was assigned to the defendant in January, 1871. He caused it to be presented to the executors, and it was allowed by them. No other step toward the collection of the demand appears to have been taken until after March, 1876, when the defendant received as his distributive share of Taylor's estate a sum amounting to twenty-five per cent only of the amount of his demand, and it appears that other creditors of the same class were paid in the same ratio.

Perhaps it was not necessary to prosecute a suit to judgment against the executors and obtain the return of an execution thereon unsatisfied.    Assuming that such acts were not essential, it certainly was incumbent upon the plaintiff to use diligence to compel an accounting by the executors of Taylor, and a due administration of the assets belonging to his estate.    The evidence tends to show that the amount of such assets exceeded $250,000, but it does not show satisfactorily in what manner those assets were disposed of.    Witnesses speak of a receivership in this court in administering which from $150,000 to $200,000 were absorbed in expenses of litigation. But that loose kind of testimony is unavailing to show that the demand against the executors could not have been collected.    That fact could have been legally established only by recourse to the means provided by law for enforcing the payment by the executors of the demand due from the deceased debtor.

The order and judgment should be reversed and a new trial granted, with costs to abide the event.

Order setting aside verdict, and judgment, affirmed with costs.