GALLAGHER and another, administrators, &c. *vs.* WHITE and another, executors, &c.

In case of a guaranty, the obligation to prosecute the principal debtor within a reasonable time, and with due diligence, is a condition precedent to the liability of the guarantor.

There is a material distinction between an omission to prosecute the principal debtor, altogether, and an omission to prosecute within a reasonable time, and with due diligence.

A reasonable time is not a definite time, and must always depend upon the particular circumstances of the case presented.

If a guarantor intends to rely upon a want of diligence in collecting, or in efforts to collect, the money due from the principal debtor, as a real and substantial defense, he should raise and present the question distinctly, for the judgment of the court, by asking for specific instructions to be given to the jury.

Where a subsequent holder of a promissory note sues upon a guaranty indorsed thereon, claiming that the guaranty passed to him on the transfer of the note, it is competent for the guarantor to show that it was not the intention of the parties that the guaranty should accompany the note, on the transfer

Gallagher *v.* White.

of the latter to the plaintiff, but that on the contrary, it was expressly agreed that he should take the note at his own risk.

S. made a note, payable to W. or bearer. W. transferred the note to B., in part payment for a piano, at the same time guarantying its collection, by an indorsement upon the back thereof. S. failing to pay the note, at maturity, W. took it up from B. He subsequently transferred the note to the plaintiff, who expressly agreed to take the same at his own risk. Through inadvertence, however, the guaranty was not erased, at the time of the transfer. *Held* that the guaranty being a contract between W. and B. when W. paid B. the amount of the note and took it up, the guaranty was *functus officio ;* and having performed its office, its force and vitality was gone ; and that consequently the plaintiff could not maintain an action thereon.

THIS action was brought by James B. Gallagher against Stephen White. Both parties having died, after the commencement of the suit, the same was continued by George Gallagher and B. W. Clapp, the administrators of the plaintiff, against Calista White, executrix, and J. C. Streeter, executor of the defendant. The action was brought by the original plaintiff, as holder of a promissory note made by one Swan, upon a guaranty indorsed thereon, signed by Stephen White.

*John N. Whiting,* for the plaintiffs.

*Thomas Nelson,* for the defendants.

*By the Court,* BROWN, J. This is an appeal from a judgment entered upon a verdict rendered at the Kings circuit, before Mr. Justice EMOTT, in November, 1858. The defendants' testator, Stephen White, was prosecuted as the guarantor of a promissory note, of which James B. Gallagher became the holder, and upon the back of which the alleged guaranty was written. The note was dated November 14th, 1853, for the sum of $134, payable to Stephen White, the defendants' testator, or bearer, six months after date, with use, and was signed by Elias A. Swan. The guaranty was in these words : "For value received, I hereby guaranty the collection of the within note," and was signed "Stephen White." The note, with the writing upon the back in the form described, came

to the hands of one Hiram Taylor, in the manner which I shall
hereafter more particularly state, in March, 1856, who passed
it to James B. Gallagher, the plaintiffs' intestate, in April,
1857, in payment or part payment for goods sold to Taylor.
On the 8th of May, 1857, James B. Gallagher commenced an
action against Swan, the maker of the note. He obtained a
judgment, on the 28th of the same month, for the principal
and interest due thereon, with the costs of the action, and im-
mediately issued an execution thereon to the sheriff of the city
and county of New York, where Swan resided, which was re-
turned wholly unsatisfied on the 16th June, 1857.

Assuming the force and validity of White's guaranty, for
the present, his promise and obligation was that the note could
be collected from the maker, if Taylor would, within a reason-
able time, and with due diligence, prosecute the same to judg-
ment and execution against the maker. This obligation to
prosecute within a reasonable time and with due diligence was
a condition precedent to the liability of the guarantor. (*Moak-
ley* v. *Riggs*, 19 *John.* 69. *Kies* v. *Tifft*, 1 *Cowen*, 98. *Thomas*
v. *Woods*, 4 *id.* 183. *Backus* v. *Shipherd*, 11 *Wend.* 629.
*Burt* v. *Horner*, 5 *Barb.* 501, *where most of the authorities are
referred to.*) There is a very material distinction between the
omission to prosecute the principal debtor altogether, and the
omission to prosecute within a reasonable time and with due
diligence. A reasonable time is not a definite time, and must
always depend upon the particular circumstances of the case
presented; because if the principal debtor was hopelessly in-
solvent at the time of the making of the guaranty, and so
continued, the guarantor could not be prejudiced by an omis-
sion to prosecute within two months or ten months, or any
other given period. If a suit instituted and prosecuted to
judgment at the expiration of twelve months would be as ef-
fectual to collect the money from the principal debtor, as one
instituted and prosecuted at the expiration of two months, the
guarantor would have no reason to complain that he had suf-
fered injury from the laches of the creditor. This I understand

Gallagher *v.* White.

to be the doctrine of the authorities, upon the question of due diligence and reasonable time. In the present case, fourteen months elapsed between the time the note was passed over to Hiram Taylor and the commencement of the action against Swan, the maker. It appeared from the proofs that it was past due at the time of the transfer, and that Swan was utterly insolvent at the time, which fact was well known to both Taylor and White. This insolvency has continued without any amendment. The question principally discussed upon the argument of this appeal was this same question of reasonable time and due diligence; the defendants' counsel insisting that the lapse of fourteen months before the commencement of the action against Swan exonerated the guarantor from his liability, while the counsel for the plaintiffs insisted that as the principal debtor was insolvent during the entire period, and wholly unable to respond, the delay to prosecute was not unreasonable or prejudicial to the guarantor. In looking into the bill of exceptions, however, I do not see that this question is presented. No reference was made to it upon the trial. The attention of the judge does not seem to have been called to it, except by the motion for a nonsuit, at the close of the plaintiffs' evidence, and this assumed that the question was one of law exclusively. It was not submitted to the jury as one of the propositions of his charge, nor was he requested to submit to them any instructions in regard thereto. Judging from what is disclosed by the bill of exceptions, and the manner in which the defence was conducted, the counsel for the defendants seem to have conceded the fact that there was no lack of diligence, or an unreasonable delay in prosecuting the claim to judgment and execution against Swan, the maker of the note. Mr. Justice Nelson, in *Backus* v. *Shipherd,* (*supra,*) thought that a question similar in its nature was a mixed question of law and fact, and should have been submitted to the jury. This was also the view taken by the court in *Thomas* v. *Woods,* (*supra.*) Now if the defendant intended to rely upon the want of diligence in collecting, or in efforts to

collect, the money due on the note from Swan, as a real and substantial defense, he should have raised and presented the question distinctly for the judgment of the court, by asking for specific instructions to be given to the jury,

There is, however, a serious and insuperable impediment in the way of the plaintiffs' recovery, which I shall now proceed to examine. The contract of guaranty is a special contract, When the subject is the payment or the collection of a promissory note, whether the guaranty be written upon the back of the note or in a separate paper, the guarantor cannot be charged either as maker or indorser. "There are cases which hold that the guarantor of a promissory note may sometimes be treated as maker, and sometimes as indorser. This has usually been allowed for the purpose of giving effect to the supposed intention of the parties, as ascertained by extrinsic evidence; though there has not always been so fair an apology for altering the contract. But on whatever ground the courts may have acted, it is a dangerous proceeding. At the very best it violates the salutary rule that all prior negotiations between the parties are to be deemed merged in the final written agreement, and allows that agreement to be overruled by the conversations that preceded it, But the courts can have no right, under color of construing the agreement, to say that it means something else from what the language of the instrument plainly imports." (*Judge Bronson, in Brown* v. *Curtiss,* 2 *Comst.* 225. *See also Lamourieux* v. *Hewit,* 5 *Wend.* 307.) The holder of such a note with a guaranty indorsed thereon has no such rights as an indorsee for value, against the guarantor, because the guaranty is not strictly negotiable under the law merchant, In *Cooper & Peabody* v. *Dedrick,* (22 *Barb.* 516,) Mr. Justice Marvin held that the production and possession of a promissory note payable to bearer was *prima facie* evidence of title in the plaintiff. And as the guaranty was upon the note, the transfer of the note carried with it the guaranty, as incident thereto. Under the provision of the code, the party in interest would bring the action in his own

name. The bearer or indorsee of a promissory note, with such a guaranty indorsed upon the back of it, would take the latter as assignee of a special contract, and in his hands it would be subject to every defense which might have been made against it in the hands of the person to whom it was said to have been given. If he made and entered into it he could not, in an action at law, certainly, show that it was not intended he should be bound by it, or that his duty and obligation was different from that expressed in the instrument. But he would be at liberty to show that he did not make it; that it had not been delivered; that it came to the hands of the party who claimed to have received it from the guarantor, by accident or mistake; or that it was surreptitiously obtained; or in fact any thing else which would establish that no such contract of guaranty had ever been made. The instrument under consideration is not under seal, but is of that class denominated parol contracts. Hiram Taylor, the person with whom it is claimed that the defendants' testator made it, was not named in the written instrument as a party to it; and if it was competent for him or those who claimed by transfer from him his right to it by showing that it passed to him with Swan's note, it was competent for the defendants to disprove that fact by showing that it was not intended by either party that it should pass with the note. This was substantially the view taken of the transaction by the judge at the trial; for he told the jury, "that as the guaranty was on the back of the note when it was passed by White to Taylor, the presumption of law was that the guaranty was delivered to Taylor, but that this presumption might be rebutted by clear proof that it was not the intention of the parties that it should be delivered." It will be seen, presently, that this delivery was the sole element in this pretended contract. The testimony on the part of the plaintiffs was quite brief. They proved and produced the note with the guaranty indorsed upon the back thereof. They also proved that Hiram Taylor transferred it by delivery to James B. Gallagher in payment of the goods sold; the commencement of the suit;

the judgment and the execution against Swan; and the return of the execution unsatisfied. They also established, by the admission of the defendants' counsel, that Swan had been insolvent since the making of the note, and White knew it. That the note was given by Swan to White, who, in the latter part of November, 1853, and before the note matured, transferred it to one Berry, in part payment for a piano, at which time he wrote and signed the guaranty on the back, which was the condition on which Berry accepted it. Swan did not pay the note at maturity, and White then took it up from Berry and kept it amongst his papers until it was passed to Taylor in March, 1856. Here the plaintiffs rested. The defendants thereupon moved for a nonsuit, which the court refused, and the defendants excepted. The plaintiffs offered no other evidence.

The defendants then proved by the deposition of the defendant Stephen White, and by three other witnesses present at the transaction, that at White's store in Watertown, in March, 1856, Hiram Taylor, who was a dealer in watches, was negotiating with White to sell him a watch in exchange for some furs. In the course of the negotiation White said he had a note against Swan, not worth any thing, which, with the furs in the store, he would give for the watch. He also said he did not consider the note worth any thing. That he had once passed it off and guarantied it, and was obliged to take it up, Taylor, he said, might get something for it. Taylor must take the note at his own risk, as he (White) did not consider it worth any thing. The exchange of the furs and the note for the watch was consummated upon these terms. Willet Barr, one of the witnesses, thinks White said he would not be bound by the guaranty; but White himself says nothing was said upon the subject of the guaranty, and that he did not think of it at the time. All the four witnesses concurred, however, that Taylor was to take the note at his own risk, and that White said he did not regard the note of any value. These facts were not put in doubt or dispute by any thing which oc-

Gallagher *v.* White.

curred at the trial. The plaintiffs examined no witnesses upon that part of the case, but relied for proof of the contract upon the note being in Taylor's hands with the guaranty written upon it. It appeared by the plaintiffs' own showing, that it had been written and signed as a contract with Berry. That White had paid Berry the money due upon the note at maturity, in execution of the contract, and taken it up. It was *functus officio*. It had performed its office, and its force and vitality were gone. Beyond the mere transfer of Swan's note, there was no contract of any kind between White and Taylor. "A contract includes a concurrence of intention in two parties, one of whom promises something to the other, who on his part accepts such promise." The presence of the written guaranty on the back of the note is explained. It was put there as the evidence of a contract of guaranty with Berry and not with Taylor. The proof shows that it was left there at the time of the transaction with Taylor by accident and mistake; the parties either not thinking of it, or not realizing the uses which might afterwards be made of it; for the proof is indisputable that the note was regarded at the time as of little or no value, and that Taylor was to take it at his own risk, and not upon the credit of White.

When the evidence upon both sides was closed, the defendants renewed their motion for a nonsuit, which the court denied, and they excepted. They then requested the court to direct the jury to find a verdict for the defendants, which the court declined to do, and thereupon the defendants again excepted. The jury then found a verdict for the plaintiffs, for the amount of the note and the interest. I think the court erred in declining to instruct the jury to find a verdict for the defendants. There was literally nothing for the jury to pass upon. There was no conflicting evidence and no disputed facts. The whole case resolved itself into a question of law, and that was whether the facts to which I have referred constituted a contract of guaranty between White and Taylor. To leave it to

the jury was to invite them to enter a province which belonged exclusively to the court.

The judgment should be set aside and a new trial ordered, with costs to abide the event.

[Kings General Term, February 13, 1860. Lott, Emott and Brown, Justices.]