Cady *v.* Sheldon.

------------•◆•------------

Jay Cady and others, executors, &c. *vs.* Gaylor Sheldon and others.

A guaranty of collection implies that a note or evidence of debt is good, or good and collectible against the principal debtors; and this means collectible by due course of law.

Ordinarily, to test that question, it is necessary that the customary legal proceedings should be resorted to, viz. a judgment and execution against the parties primarily liable to pay; and the return of an execution unsatisfied is *prima facie* sufficient and satisfactory evidence that it is not collectible.

Yet it is not absolutely *indispensable* that legal proceedings should be resorted to, to test the collectibility of the paper, if it otherwise satisfactorily appears that a resort to such proceedings would be entirely ineffectual. Proof that the principal debtors, from the period of the maturity of the debt, have been uniformly insolvent and unable to pay any part of the debt, is satis-

Cady *v.* Sheldon.

·factory and sufficient evidence that legal proceedings would be unavailable to collect the note.

Legal proceedings are not absolutely a condition *precedent* to the liability of the guarantor; but equivalent evidence of the inability to collect any part of the debt will suffice.

In an action upon an instrument guarantying the collection of a bond, the referee having found, upon evidence warranting such a conclusion, that the principal debtors were severally insolvent and unable to pay any part of the bond; *Held* that after such a finding the court might well conclude that a suit against them would be utterly nugatory, and therefore unnecessary to be brought as a condition precedent to the liability of the guarantors.

When a mortgage is given, as collateral to the bond guarantied, it is not indispensable that the holders of the bond should seek satisfaction out of the mortgaged premises, by a foreclosure, if it appears that a resort to that remedy would have proved fruitless, in consequence of the sale of the mortgaged premises under a statute foreclosure, to satisfy a prior mortgage, at a price leaving no surplus.

Where a mortgagee assigns the mortgage, and the bond accompanying the same, to another, covenanting in the assignment that they shall be paid when due, a subsequent holder of the bond, to whom the same has been assigned, with a guaranty of payment, must first attempt the collection of the debt, from the obligee and mortgagee, before he can resort to the guarantors, upon their guaranty.

Such a covenant is an absolute *guaranty* of payment, entitling the assignee to prosecute the assignor thereon immediately after default in payment of the amount due upon the bond and mortgage; and the benefit thereof will pass to a subsequent assignee, under an assignment of the securities, executed by the covenantee.

ON and before the 25th of May, 1842, the defendants were partners, conducting mercantile business in Albany, under the name of G. & S. Sheldon & Co. On the 23d day of March, 1840, O. & L. Holcomb and A. H. Spencer made and executed to H. Farrington a bond and mortgage for $2507.41, payable, the one half in four and the other in five years from date, with interest. On the 13th of October, 1841, Farrington assigned the bond and mortgage to Alexander Sheldon, for the consideration of $2500; and Smith Sheldon, one of the defendants, was a witness to the assignment. In the assignment Farrington covenanted with Alexander Sheldon that the money secured by the bond and mortgage would be

Cady *v.* Sheldon.

paid at the time the several payments became due. On the 25th of May, 1842, Alexander Sheldon, for the expressed consideration of $2500, paid by Samuel Jackson, assigned the bond and mortgage to him; and on the same day, the defendants, by a guaranty indorsed on the back of the bond, bearing the same date as the assignment, guarantied the collection of the bond. The guaranty was in these words: "For and in consideration of $2500, to us in hand paid by Samuel Jackson, the receipt whereof is hereby acknowledged, we guarantee the collection of said bond. Dated at Albany, May 25, 1842. G. & S. Sheldon & Co." On the bond was indorsed by G. & S. Sheldon & Co., in their firm name, a receipt dated May 2, 1842, for interest, up to March 23, 1842, by note to them. The defendants, also, and after the assignment to Samuel Jackson, received and indorsed on the bond, in June, 1843, $175.51, for interest due on the bond and mortgage. The mortgaged premises, which were situated in Carthage, Jefferson county, were sold upon the foreclosure of a prior mortgage, and the proceeds of sale were $600 or $700 less than the amount due on such mortgage. The obligors in the bond to Farrington, as the referee expressly found, were severally insolvent and unable to pay any part of the bond—L. Holcomb and Spencer from and after March, 1844, and O. Holcomb from and after January, 1845. Samuel Jackson died on the 12th of April, 1845, after having made his will, wherein he appointed the plaintiffs his executors and executrix, &c., and letters testamentary were granted to the plaintiffs. The plaintiffs, on a complaint stating most of the foregoing facts, demanded judgment against the defendants for the said sum of $2507.41, with interest from the 23d day of March, 1844, besides costs. The referee dismissed the complaint, and nonsuited the plaintiffs. Judgment having been perfected, in favor of the defendants, on the report of the referee, the plaintiffs appealed therefrom to the general term.

*A. C. Paige,* for the appellants.

*J. H. Reynolds,* for the respondents.

' *By the Court,* HOGEBOOM, J.   The first question to be determined is the nature and obligation of the guaranty.   The defendants "guaranteed the collection" of the bond.   It is therefore a guaranty that the bond is collectible; that is, capable of being collected of the parties liable or bound to pay it.   A guaranty of the collection of a note is a guaranty that it is collectible *by due course of law.   (Cumpston* v. *McNair,* 1 *Wend.* 457.)   It obliges the party to whom the guaranty is given, to prosecute all the parties with due legal diligence before he can resort to the guarantor.   (*Moakley* v. *Riggs,* 19 *John.* 69.   *Thomas* v. *Woods,* 4 *Cowen,* 173. *Loveland* v. *Sheppard,* 2 *Hill,* 139.   *Burt* v. *Horner,* 5 *Barb.* 501.)   In the latter case it is said that the legal effect of such a guaranty is, that the guarantee (the party receiving the guaranty) would, within a reasonable time and with due diligence, institute against the principal debtors legal proceedings for the collection of the paper, and prosecute them without delay to consummation; that this was a condition precedent to the liability of the defendants, and imposed the duty of diligence not only in the *manner* of the prosecution but also in its *institution.*

In *Thomas* v. *Wood,* Justice Woodworth says, "whatever may be the effect of letting a term pass, there is *no doubt* that seventeen months' delay would discharge from the guaranty."   In *Burt* v. *Horner* it is said, "the question is not whether the defendants have been injured by the delay; but whether the plaintiff has performed his contract—the condition precedent to his right to call upon them.   A compliance on his part with the terms of the guaranty is indispensable." (5 *Barb.* 506.)   It was further held in that case that the mode of ascertaining whether the debtor has property to satisfy the debt, within reach of the process of the court, is to

Cady *v.* Sheldon.

issue such process to test the question, (*p.* 507;) and that it does not lie with the plaintiff to say that this would be "a mere idle ceremony."

In *Vanderveer* v. *Wright,* (6 *Barb.* 547,) it was held that "a guaranty that a demand is collectible is clearly a conditional promise, binding upon the guarantor only in case of diligence. (*Loveland* v. *Sheppard,* 2 *Hill,* 139. *Curtis* v. *Smallman,* 14 *Wend.* 231. *Moakley* v. *Riggs,* 19 *John.* 69.)" "Nor is it like a guaranty of payment which, like that of an indorsement, is similar to a new note, but is purely a conditional promise, becoming absolute on the performance of the condition precedent. (*White* v. *Case,* 13 *Wend.* 543.)" (6 *Barb.* 550.) In a dissenting opinion, (not on the main question,) Judge Willard lays down the rule as follows, (*Id.* 552:) "The obligation of the defendant upon his guaranty was, in legal effect, that he would pay the note, provided it could not be collected of the maker, after using due diligence, by process of law, to collect it of him. In general, a party who suffers a term to elapse without prosecuting the maker is guilty of laches, and loses his remedy against the guarantor. (*Moakley* v. *Riggs,* 19 *John.* 69. *Kies* v. *Tifft,* 1 *Cowen,* 98. *White* v. *Case,* 13 *Wend.* 543. *Eddy* v. *Stanton,* 21 *id.* 255. 5 *id.* 307. *Loveland* v. *Sheppard,* 2 *Hill,* 139. *Cumpston* v. *McNair,* 1 *Wend.* 457. *Curtis* v. *Smallman,* 14 *id.* 231. *Thomas* v. *Woods,* 4 *Cowen,* 173. *The People* v. *Jansen,* 7 *John.* 332.) The remedy however against the guarantor will not be impaired, if the debtor was insolvent and so continued, after the guaranty, and up to the commencement of the suit, nor if the delay in prosecuting the principal debtor is at the instance of the guarantor. In the first case, the guarantor suffers no loss by the delay; and in the second, he cannot be permitted to turn an indulgence granted at his own solicitation into a weapon of defense. (*Thomas* v. *Woods,* 4 *Cowen,* 173.)"

In *Hart* v. *Hudson,* (6 *Duer,* 303,) Judge Duer of the superior court of New York lays down the rule in this lan-

guage: "A guaranty of the collection of a promissory note, or other evidence of a debt, does not mean that it shall be paid at its maturity, but that by a prompt and diligent use of the means which the law affords, its payment may be enforced. Hence, if the debt so guarantied is unpaid at its maturity, the creditor, if he wishes to retain the liability of the guarantor, must without delay commence proceedings for its recovery, and it is only when he can show that all the remedies which the law gave him against the debtor had been exhausted, that he is in a condition to demand payment of the debt from the guarantor. If he delay without necessity to commence the necessary proceedings, or, when an action has been commenced, to prosecute it to judgment and execution, the delay is imputed to him as laches, and the guarantor is discharged. (*Taylor* v. *Bullen*, 6 *Cowen*, 624. *Cumpston* v. *McNair*, 1 *Wend.* 455. *Eddy* v. *Stanton*, 21 *id.* 255. *Moakley* v. *Riggs*, 19 *John.* 69. *Loveland* v. *Shepard*, 2 *Hill*, 159. *Burt* v. *Horner*, 5 *Barb.* 501.)"

In *Gallagher* v. *White*, (31 *Barb.* 94,) Judge Brown uses this language in regard to a guaranty of collection: "Assuming the force and validity of White's guaranty, for the present, his promise and obligation was that the note could be collected from the maker if Taylor would, within a reasonble time and with due diligence, prosecute the same to judgment and execution against the maker. This obligation to prosecute within a reasonable time and with due diligence was a condition precedent to the liability of the maker, (citing several cases.) There is a very material distinction between the omission to prosecute the principal debtor *altogether*, and the omission to prosecute within a *reasonable time* and with due diligence. A reasonable time is not a *definite* time, and must always depend upon the particular circumstances of the case presented, because if the principal debtor was hopelessly insolvent at the time of the making of the guaranty, and so continued, the guarantor could not be

prejudiced by an omission to prosecute within two months, or ten months, or any other given period."

In the case of *Morris* v. *Wadsworth*, (11 *Wend.* 100; *S. C.*, 17 *id.* 103,) it was held that unless the very terms of the guaranty imply that the liability of the guarantor depends upon the failure to obtain payment of the principal by proceedings at law, such proceedings are not a condition precedent; and that a guaranty to pay, if recompense cannot be obtained from it, does not require a suit against it, if he is insolvent.

In *Merritt* v. *Lincoln*, (21 *Barb.* 249,) it was held that a surety will not be discharged by the neglect of the creditor to collect the debt of the principal, on being requested by the surety to do so, unless it appears that the principal was at the time of the request solvent and able to pay his debts, and that a creditor is not bound to pursue an insolvent principal at the direction of the surety. Judge Welles says, at p. 251, "If there was an inability on the part of the principal to pay his debts, it is not perceived how a prosecution would result in collecting the debt in question, unless some advantage or preference over other creditors would be thereby obtained, which the law does not favor, and which the court will not encourage."

In *Newell* v. *Fowler*, (23 *Barb.* 632,) the same judge (Welles) delivering the opinion of the court, in speaking of a guaranty of collection of a bond and mortgage, says: "It was a condition precedent to any liability of the guarantor that the other party to the contract of guaranty should, within a reasonable time, institute legal proceedings upon the securities assigned, and prosecute them with diligence to a consummation. It is not pretended that any thing of this kind has ever been done. Nothing will excuse the party holding the guaranty from the performance of this condition but the act of the guarantor himself. It was a part of the contract, and it will not answer for the party to say it would have been of no use to prosecute. Conditions precedent

must be strictly performed." After speaking of the evidence of a waiver, and saying that it related entirely to the *mortgage*, the judge adds, ( *p.* 623 :) "It does not appear that the testator waived proceedings against Kent, or his estate, on the bond. That was as much a part of the condition as was the proceeding to foreclose the mortgage. It no where appears when Kent died, or when he became insolvent, *if that were material.* It is sufficient that the contract imposed upon Starke and his assignees the burthen of exhausting by legal proceedings every remedy which the bond and mortgage gave them, before the guarantor's liability should become fixed."

In *Eddy* v. *Stanton,* (21 *Wend.* 255,) the plaintiffs declared on an agreement made by the defendants cotemporaneous with the transfer by the defendants to the plaintiffs of a note against one Simmons, that in case the plaintiffs could not set off such note in payment of any balance due from them to Simmons, or collect the same in some other way or due course of law, they would repay the plaintiffs the amount of the note with interest and the costs of any prosecution to collect or set off the note. They averred an inability to *set off* the note (not by suit) in payment of any balance due Simmons, and that Simmons was *insolvent* at all times from and after the transfer of the note, and therefore that a suit to collect the same would have been unavailable. In a second count it was averred that thirty-one months after the transfer the defendants *released* the plaintiffs from any obligation to sue the note, and *refused* to pay the costs of prosecution. The court held, on demurrer to the declaration, ( *p.* 258,) that "the *insolvency* of Simmons was no excuse, (*Moakley* v. *Riggs,* 19 *John.* 91, 2 ;) especially in a case like this, of *set-off,* and wherein the defendants had agreed to bear the expense. (*Thomas* v. *Woods,* 4 *Cowen,* 173. *Taylor* v. *Bullen,* 6 *id.* 624.)" The court further held that as to the release and refusal to bear the costs of prosecution, it was *too late,* having occurred thirty-one months after the

Cady *v.* Sheldon.

transfer, and therefore after the plaintiffs had been guilty of *laches* in prosecuting the note.

From this examination of some of the leading authorities, I think the following conclusions are deducible, and supported by the weight of authority.

1. That a guaranty of collection implies that a note or other evidence of debt is good or good and collectible against the principal debtors; and this means collectible by due course of law.

2. That, ordinarily to test that question, it is necessary that the ordinary legal proceedings should be resorted to, to wit, a judgment and execution against the parties primarily liable to pay; and that a return of an execution unsatisfied is *prima facie* sufficient and satisfactory evidence that it is not collectible.

3. That it is not absolutely *indispensable* that legal proceedings should be resorted to, to test the collectibility of the paper, if it otherwise satisfactorily appears that a resort to such proceedings would be entirely ineffectual; and that proof that the principal debtors from the period of the maturity of the debt have been uniformly insolvent and unable to pay any part of the debt, is satisfactory and sufficient evidence that legal proceedings would be unavailable to collect the debt.

4. That legal proceedings are not, under the authorities, absolutely a condition *precedent* to the liability of the guarantor, but equivalent evidence of the inability to collect any part of the debt will suffice. And that however desirable it may be (as I think it is) to have one uniform rule, to wit, the return of an execution unsatisfied against the principal debtor as the test of the collectibility of a debt, the weight of authority does not as yet allow us to take that position and hold it as the irreversible rule and test, without any exception whatever.

Applying these principles to the present case, we find that the referee has expressly found, on evidence warranting such

a conclusion, that the principal debtors were severally insolvent and unable to pay *any* part of said bond. After such a finding we may well conclude that a suit against them would have been utterly *nugatory,* and therefore unnecessary to be brought as a condition precedent to the liability of the defendants.

So, also, I think it was not indispensable to foreclose the mortgage which was the collateral to the bond. The bond and mortgage became due, one half thereof in March, 1844, and the remainder in March, 1845. In January, 1846, (of course on proceedings previously instituted,) the mortgaged premises were sold under a statute foreclosure to satisfy a prior mortgage, and were sold and struck off to a purchaser for a sum between $600 and $700, which left no surplus. The amount of the prior mortgage does not appear; but of course it exceeded this amount. If regularly foreclosed, as we must assume to have been the case, the subsequent mortgagees would have had notice of the proceedings. But whether so or not, we cannot presume that the sale was not fairly conducted, or that the premises did not bring an adequate price; nor was the sale at such a distance of time from the maturity of the bond, that we can suppose the property (real estate) to have materially depreciated in value. I am of opinion, therefore, that if the guaranty of the collectibility of the *bond* would require the holders of the security prima facie to seek satisfaction of the debt out of the mortgaged premises, they stood excused for not resorting to this remedy, by satisfactory evidence that it would have proved of no utility whatever.

We are obliged therefore to go one step further, and determine whether as a prerequisite to the defendants' liability upon the guaranty, the plaintiffs were obliged to attempt the collection of the debt out of the obligee and mortgagee, Farrington, who had covenanted on the assignment of the bond and mortgage that they should be paid when due. If this was necessary, then the plaintiffs have failed to make out a

cause of action, because they have not prosecuted Farrington. To determine this question, we must inquire whether this covenant was transferred or enured to the benefit of the plaintiffs; and if so, whether it was one of those means for determining the collectibility of the bond debt, which must be resorted to before the liability of the defendants would attach upon the guaranty.

O. & L. Holcomb and Spencer executed the bond in question to Farrington. The mortgage of O. Holcomb was collateral to it and doubtless accompanied it—so we must presume—into the hands of the subsequent holders. It bore the same date as the mortgage, was executed by one of the obligors to the obligee in the bond, secured the same sum, and expressly referred on its face to the bond as a collateral security.

By an assignment bearing date the 15th day of October, 1841, Farrington assigned the bond and mortgage to Alexander Sheldon. In that assignment is contained the following covenant: "And I do hereby promise, covenant and agree, to and with the *party of the second part*, (Sheldon,) that there is now secured to be paid by the said bond and mortgage the sum of twenty-five hundred and seven dollars and forty-one cents, with interest from the 23d March, 1841, *and that the same will be paid at the time the several payments become due by such bond and mortgage.*"

This is undoubtedly an absolute guaranty of *payment,* and would have entitled Sheldon to prosecute Farrington thereon, immediately after default in the payment of the amount due on the bond and mortgage. (*Allen* v. *Rightmere,* 20 *John.* 365. *Mann* v. *Eckford,* 15 *Wend.* 502. *Kemble* v. *Wallis,* 10 *id.* 374.)

Who Alexander Sheldon was, or what was his connection with the defendants, the proof does not disclose, and we can only infer from the allegations in the pleadings, and from the fact that Smith Sheldon, one of the defendants, was a subscribing witness to the assignment, and from some other facts.

VOL. XXXVIII.          8

to be presently alluded to. About seven months thereafter, and on the 25th day of May, 1842, Alexander Sheldon, by an instrument in writing under his hand and seal, assigned the bond and mortgage to Samuel Jackson, the testator of the plaintiffs. Cotemporaneously therewith the guaranty in question was executed by the defendants, bearing the same date as the last assignment, (25th May, 1842,) and indorsed upon the *back* of the bond. On its *face* it is only a guaranty of the collection of the bond; the words being, " For and in consideration of $2500 to us in hand paid by Samuel Jackson, the receipt whereof is hereby acknowledged, *we guarantee the collection of the said bond.*"

That Alexander Sheldon had some connection with the defendants, and that the defendants either had the benefit of, or were in some way interested in, the proceeds of the last mentioned assignment, is fairly presumable from the following facts : 1, The execution of the assignment and of the guaranty were simultaneous—at least they bear the same date—and the guaranty is indorsed upon the back of the bond, which is presumed to have been delivered simultaneously with the assignment, to the assignee. 2. The consideration ($2500) is the same in both ; and the guaranty expressly acknowledges this sum to have been paid by Jackson to the *defendants,* as the assignment acknowledges it to have been paid to *Alexander Sheldon.* That *two* sums of this amount were paid is not pretended, and is in the highest degree improbable. 3. On the bond (and on the mortgage) is indorsed under date of May, 1852, a receipt of the *defendants* of the interest ($175.51) up to March 23, 1842. The interest of the previous year is receipted thereon by Farrington. Alexander Sheldon would appear to have been, therefore, only the *nominal* holder, as he received no part of the interest, but the *defendants* (to whom the bond and mortgage were never in terms assigned) received the whole interest during the period that Alexander Sheldon had the nominal title thereto. 4. It is also remarkable (though not particularly connected with

Cady v. Sheldon.

the present question) that both the bond and mortgage con-tain an indorsement under date of *June*, 1843, of one year's interest ($175.51) up to March 23, 1843 ; when the assign-ment would indicate that the bond and mortgage had been assigned to Jackson on the 25th of *May*, 1842.

These facts were, I think, sufficient to show, or to induce the referee to infer, that the defendants (and not Alexander Sheldon) were the real owners of the bond and mortgage at the time of the assignment to Jackson ; and therefore that they are not to be treated in regard to the *guaranty* as mere *strangers* to the transaction, or mere *sureties* for Alexander Sheldon.

What, under such circumstances, was the effect of the cov-enant or guaranty of payment made by Farrington ? Un-doubtedly the covenant of Farrington was one of which Alexander Sheldon, the covenantee, might avail himself ; it was at all events made for *his* benefit. Assuming that he was the real owner of the bond and mortgage, by the assign-ment, and that he regarded the covenant as one of value, is there much doubt but that he designed in the assignment to Jackson to transfer the benefit thereof and the remedy thereon to him. He transfers the bond and mortgage, and must, I think, be regarded as intending to transfer all the incidents and collaterals thereto, like the covenant in question. He authorizes the assignee to take all lawful ways and means for the recovery of the said sum of money, and among others, I think, the remedy on the covenant. There was no object in retaining it ; for by so doing it would become extinct. And it may have entered as an important element in the consid-eration which Jackson paid. It is true that previous to the code it would have to be sued in Sheldon's own name, but only for the benefit of Jackson. But that objection no lon-ger exists ; as every suit must now be brought in the name of the real party in interest. (*Code*, § 111.) And I do not see why a covenant of this description, giving additional value to the bond and mortgage and connected with it, should not

be regarded, in the absence of evidence to the contrary, as passing with it. (*See Ketchell* v. *Burns*, 24 *Wend.* 456; *McLaren* v. *Watson's Ex'rs*, 26 *id.* 425; *S. C.*, 19 *id.* 557; *Cooper* v. *Dedrick*, 22 *Barb.* 516.) In the latter case the court say, (*p.* 518,) "In my opinion when a guaranty is written upon a note and the note is transferred, nothing being said touching the guaranty, the contract of guaranty passes with the note. In other words, the sale and delivery of the note with the guaranty upon it furnishes prima facie evidence of a sale of the contract of guaranty. In the present case the defendant was one of the payees of the note, and the note was also payable to bearer. He transferred the note and guarantied the payment. In my opinion, any one who should become the holder of the note could maintain an action upon the guaranty, unless it should be shown that the contract of guaranty was not transferred at the time the note was transferred." (*See also Gallagher* v. *White*, 31 *Barb.* 96, 97.) I do not think *Thompson* v. *Rose* (8 *Cowen*, 266) is in conflict with these views, but rather in support of them.

The remaining question is whether if this covenant or guaranty on the part of Farrington passed, as an incident to the debt, to the plaintiff's testator, the remedy upon *it* must be pursued as well as upon the bond itself; before the liability of the defendants would attach. And I am of opinion, on the whole, that it would. The evidence is not decisive, but it is to be presumed, I think, that Jackson *knew* of this covenant. It was not *attached* to or indorsed upon the bond. But it was as a part of the assignment, one of the links in the chain of evidence essential to establish the testator's title to the bond; and it was produced, among the other papers, by the plaintiffs, at the trial. It was therefore one of the known and accessible remedies for the collection of the debt, and when it was transferred along with the other remedies, to Jackson by the *defendants*, (and the nominal holder, Alexander Sheldon,) it must be presumed that they designed the assignee should resort to it as one of the available reme-

dies for the collection of the debt, before they were to be made liable upon their guaranty. In the case of a guaranty of a note, it is indispensable that the remedy should be pursued against the *indorsers* as well as the *makers* of the note, before the guarantor can be held responsible, and I do not see why the same rule should not apply' as to other sureties or previous guarantors of the debt. (*Moakley* v. *Riggs*, 19 *John.* 69. *Thomas* v. *Woods*, 4 *Cowen*, 173. *Kies* v. *Tifft*, 1 *Cowen*, 98. *Burt* v. *Horner*, 5 *Barb.* 501. *Loveland* v. *Shepard*, 2 *Hill*, 139.)

I am therefore of opinion that it was incumbent upon the plaintiffs or their testator to pursue their remedy against Farrington, before prosecuting the defendants, and that for their neglect to do so the decision of the referee was right, and that the judgment entered upon his report should be *affirmed*.

