ELIAS A. MEAD, APPELLANT, v. ,CHARLES E. PARKER, RESPONDENT.

*Guaranty of collection — construction of — right of a party having several securities to elect which he will enforce — record of a deed — to whom it is notice.*

September 1, 1875, the defendant, being the owner of a bond and mortgage given in 1869 by Lewis Paddock to Norman Parker, by an instrument in writing, sold, assigned and delivered the same to one Jennings, "and therein and thereby guaranteed the collection of the same." Prior to such assignment and on January 2, 1871, Paddock had sold the premises to one Carman, who, by the terms of the deed, assumed and agreed to pay the said mortgage. This deed was recorded January 31, 1871.

Thereafter the plaintiff, having become the owner of the said mortgage by assignment from Jennings, brought an action to foreclose it, to which neither Carman the grantee of the premises, nor this defendant, the assignor of the mortgage, was made a party. A deficiency having arisen upon the sale the plaintiff, after having obtained leave from the court so to do, brought this action upon the defendant's (the assignor's) guaranty to recover the amount of the said deficiency. It did not appear that Jennings, at the time of his purchase of the mortgage, knew of the deed to Carman, or of the latter's agreement to pay the mortgage. Upon the trial the plaintiff, in offering certain evidence, read in evidence the deed to Carman from the record thereof.

*Held,* That the record of the deed was no notice to Jennings, the assignee of this defendant, of the existence of the deed or of the assumption clause therein contained.

That its introduction in evidence by the plaintiff was no evidence that Jennings knew of its existence at the time he purchased the bond and mortgage from the defendant.

That in view of the fact that there was no evidence that Jennings knew at the time the guaranty of collection was signed by the defendant that Carman had in his deed assumed payment of the mortgage, it was not to be inferred that it was a condition of the defendant's guaranty that Carman should be first prosecuted to judgment and execution upon his agreement in his deed to assume payment of the mortgage.

That the plaintiff was entitled to recover; that he was not, under the circumstances of the case and the terms of the guaranty, bound to first procure a judgment against Carman and have an execution issued thereon and returned unsatisfied.

APPEAL from a judgment, entered upon a verdict in favor of the defendant, and from an order denying a motion for a new trial, made upon the judge's minutes. The questions presented for the consideration of the court arise upon a bill of exceptions, from

which it appears that in November, 1869, one Lewis Paddock executed and delivered a bond to one Norman Parker for the payment of the sum of $1,700, and gave a mortgage upon real estate to secure its payment, which mortgage was recorded in the Cayuga county clerk's office on the 7th of April, 1870. On the 10th of May, 1872, the defendant in this action became the owner of such bond and mortgage, by an assignment from the obligee and mortgagee. Afterwards, and on the 1st day of September, 1875, the defendant, in consideration of $1,700, sold, assigned and transferred the bond and mortgage to one Cordial L. Jennings, and guaranteed the collection of the same. The plaintiff in this action became the owner of the same by an assignment from Jennings. Before the assignment of the bond and mortgage by Norman Parker to the defendant, and on the 2d day of January, 1871, the mortgage debtor, Lewis Paddock, sold the premises to one Stephen Carman, and his deed was recorded on the 31st day of January, 1871, in Cayuga county clerk's office. Carman assumed and agreed to pay the before-mentioned mortgage, and this obligation on his part was mentioned in the deed to himself. The plaintiff, as assignee of the bond and mortgage, commenced an action in this court to foreclose the same, making Lewis Paddock and others defendants, but not making this defendant or Carman parties to the action. The usual decree of foreclosure was granted, and entered in the proper clerk's office on the 28th of March, 1878, and the premises were sold under the decree to the defendant in this action for the sum of $1,000, and afterwards a judgment for deficiency was entered against Lewis Paddock for the sum of $934.69, and an execution against his property was issued thereon, and returned *nulla bona,* and such deficiency now remains wholly unpaid and unsatisfied. The plaintiff now brings this action to collect from the defendant the deficiency before mentioned, claiming to recover the same by virtue of the defendant's covenant of guaranty of collection contained in the assignment of the bond and mortgage to Jennings. Before commencing this suit, the plaintiff procured from this court an order granting him leave to bring and prosecute this action against the defendant. Upon the trial the court charged the jury that the plaintiff could not recover in this action, because it was not shown that his remedy against Stephen Carman, who, in the conveyance

of the mortgaged premises to him, assumed and agreed to pay the mortgage, had been exhausted, to which charge the plaintiff excepted. The jury thereupon rendered 'a verdict of no cause of action, in favor of the defendant. The judge before whom the cause was tried entertained a motion on the part of the plaintiff for a new trial, founded upon his minutes, and the same was denied.

*H. V. Howland,* for the appellant.

*Parker & Greenfield,* for the respondent.

BARKER, J.:

There is but one question presented for consideration by the bill of exceptions. It is this: Was it made one of the conditions of the defendant's liability, on his agreement of guaranty, that he should not be called upon to pay the bond or any part thereof until after an effort had been made by the purchaser, or his assignees, to collect the same of Carman, who had at that time become the owner of the the mortgaged premises, and who had assumed the mortgage debt and agreed with his grantor, the bond debtor, that he would pay the same?

The only defense interposed is that, by the terms of the guaranty, such is made one of the conditions of the defendant's liability, and before any suit can be maintained on his covenant, the holder of the bond and mortgage must prosecute Carman, on his promise contained in the deed to himself, to judgment, and issue execution thereon, and have the same returned unsatisfied in whole or in part. As this has not been done, the point stated becomes the turning point of the case

The contract of guaranty is not set forth at large in the bill of exceptions, but it is stated to be in writing. It is alleged in the complaint that the defendant was the owner of the bond and mortgage by virtue of an assignment from the obligee and mortgagee therein to himself. And that afterwards he sold, assigned and set over the same to Jennings, "and therein and thereby guaranteed the collection of the same, and delivered them to said Jennings."

This averment is not denied in the answer. The nature and extent of the defendant's liability, and the conditions of his agree-

ment must be found in the force and meaning of the words above quoted.

The only words that import a promise may be readily transposed, without changing their meaning, so as to read as follows: "I hereby, for value received, guaranty the collection of the said bond and mortgage." The legal import of these words is not disputed, when it is understood of whom the promise of collection is made and to whom they refer.

The assignment is an original agreement between the parties thereto, and it is to be construed and enforced according to the intention of the parties thereto, as the same can be ascertained from the language used by the parties and expressed in the written contract, the subject-matter of the agreement, and the surrounding circumstances relating to the object and purpose of the agreement, which were known by the parties and presented during the negotiations to their consideration.

We are to inquire after the mind and purpose of the parties at the time of the consummation of this agreement. The nature and extent of the obligations assumed by them respectively were then fully determined, and nothing has since occurred to change the contract in any particular. The limitations and conditions placed upon the defendant's promise are such, and none other, as the parties mutually understood and agreed upon at the time of making the contract, and as are expressed in the instrument. Words are used by contracting parties for the purpose of expressing their common ideas on the subject under consideration.

It must be conceded as a fair and reasonable view to take of the question presented for consideration, that if the parties were ignorant of the dealings which had been had between the mortgagee and Carman, his grantee, and were not aware of Carman's promise and obligation to pay the bond debt, then it cannot be justly and fairly held that the defendant's assignee on receiving the assignment of the bond and mortgage, in effect stipulated with the defendant and made it one of the conditions of the defendant's promise, such as is now urged as a defense to this suit.

In terms the agreement is not broad enough to include Carman as one of the persons to be sued and prosecuted to judgment before resort could be had to the defendant's contract of guaranty. It is

manifest on reading the contract, that the assignee was to seek collection of the obligation which he purchased of the maker thereof, before he could demand payment from his assignor, the defendant in this action. It would be altogether unreasonable and absurd to hold that the parties had in mind a suit upon a contract of which they were both in fact ignorant. If it was the intention of the defendant to impose upon his assignee the obligation to enforce all collateral securities which might exist, including those of which he was then ignorant, before any resort could be had on his covenant as to the collectibility of the debt, it is reasonable to suppose that they would have expressed such intention more definitely and by language clearly indicating that purpose.

Upon the question whether the defendant's assignee did know of Carman's promise and obligation, the law does not indulge in any presumption one way or the other. It is a fact to be established by legal and sufficient evidence and by the party interested in maintaining the same. There is but an item or two of the evidence set forth in the bill of exceptions, which in the least bears on this subject. It is therein stated "that no evidence was given tending to prove that the plaintiff or his assignor ever knew of the existence of said covenant or agreement in Carman's deed to assume and pay the mortgage, unless such knowledge or notice is legally to be presumed from the fact of the existence and record thereof before the defendant guaranteed the collection of the said mortgage, and from the fact that the plaintiff's attorney put in evidence the record of said deed." The record of the deed from Jennings to Carman was no notice to Jennings of the fact of the conveyance or of the promise made by the grantee therein to pay the mortgage debt. The mortgage was recorded soon after it was executed and before the deed to Carman. The purchaser of the mortgage debt was not interested to know who became the owner of the premises after a record had been made of the mortgage which he was about to purchase. No transfer of the real estate after the mortgage was recorded could displace or impair the lien created thereby. It is not suggested to our mind that there was any need on the part of the purchaser to inspect the record subsequent to the time when the mortgage was recorded. The record of the deed was no notice to the defendant's assignee of the

existence of the same, and there is no provision in the recording act which makes it such. (*King* v. *Mc Vicker*, 3 Sandf. Ch. Rep., 192; *Truscott* v. *King*, 6 Barb., 347; *Wetmore* v. *Roberts*, 10 How., 53; *Reed* v. *Marble*, 10 Paige, 407; *Cheesebrough* v. *Millard*, 1 Johns. Ch. Rep., 414; *The Howard Ins. Co.* v. *Halsey*, 4 Sandf. Sup. Ct. Rep., 565.)

It appears by the bill of exceptions that, after the defendant rested, the plaintiff read in evidence, from the record thereof, the deed conveying the mortgaged premises by Lewis Paddock to Stephen Carman, in and by which the grantee assumed and agreed to pay the mortgage which has been mentioned as a part of the consideration for the sale. It is not stated upon what issue or for what purpose this deed was given in evidence, and as what occurred upon the trial is not set forth in the bill, it is not apparent why the plaintiff should need to give it in evidence. It proved the existence of the conveyance, the land embraced, and all the terms and conditions of the same; but it does not prove anything beyond that. It cannot be inferred, because this proof was made, that Jennings, the defendant's assignee, knew of its existence prior to the moment it was introduced in evidence. It does not prove even that fact, for Jennings was not a party to the suit. If the deed had been produced by Mead, and there had been evidence from which it might be inferred that he received it from the hands of Jennings, then these facts would constitute some evidence going to prove that Jennings knew of the existence of the deed at the time he purchased the bond and mortgage. In the consideration of the proposition discussed it must be kept in mind that the rights of the parties to this suit depend upon the nature and character of the original agreement between the defendant and his assignee, under whom the plaintiff claims. If it had appeared upon the trial as an undisputed fact that the plaintiff, who took his title from Jennings, knew when he purchased, that Carman had agreed to pay this bond and mortgage, it would not in the least change the character of the defendant's liability.

The respondent in his argument refers to the case of *Cady* v. *Sheldon* (38 Barb., 103) as an authority that the production of the record of the deed is some evidence that the defendant's assignee knew of the existence of the deed and its contents when he pur-

chased the mortgage debt. In that case the defendants were sued upon a guaranty for the collection of a bond and mortgage of which they were the owners by purchase. Farrington, their assignor, had guaranteed the payment of the same as the several payments fell due, which guaranty was embraced in the instrument of assignment to themselves. Upon the trial the plaintiff produced and gave in evidence the assignment containing Farrington's guaranty of payment, and the court held that as the guaranty was contained in the assignment, and that being one of the links in the chain of evidence essential to establish the plaintiff's title to the bond, and being produced by him upon the trial, that it was some evidence that it was known to the plaintiff when he purchased the bond and mortgage of the defendants that there was outstanding an obligation on the part of Farrington to pay the same. The circumstances existing in that case, tending to show that the purchaser knew that there were other remedies for the collection of the debt, do not exist in the case before us. As Carman's promise to pay the mortgage debt was in existence when the bond and mortgage were transferred to the defendant, Carman's obligation went along with it and became available to the defendant and his assignees as a remedy to which they could resort for the purpose of securing a payment of the bond debt. But, as it was not known to Jennings, the defendant's assignee, that Carman's obligation was in existence, it cannot be inferred that it was one of the conditions of the defendant's guaranty that a resort should be made to Carman's promise before he would be liable upon his agreement for the collection of the bond and mortgage. The defendant's assignee might have been quite unwilling to have purchased this security with the defendant's covenant of collectibility, if he had known that, before he could resort to the defendant's promise, he would have been compelled to hunt up Carman and prosecute his undertaking to judgment and execution. To impose that condition upon the present holder of the bond and mortgage, who is the assignee of the defendant's covenant, would be, in our opinion, to make a new bargain for the parties — to insert a new condition to the defendant's promise, of which there is no evidence that he or his assignee had it in mind at the time of the consummation of their agreement.

The respondent has sought to base an argument in support of his

position upon the legal proposition, that Carman became the principal debtor for the payment of the mortgage debt upon receiving the deed of the premises and entering into a promise to pay and discharge the mortgage. As between his grantor, who was the mortgage debtor, and himself, he did become the principal debtor, and the grantor his surety for the payment of the same. It is, however, erroneous to say, as between the owner and holder of the bond, that Carman is the principal debtor. We do not see, however, how the relation in which Carman stood to his grantor, or to the holders and owners of the mortgage debt, has anything to do with the nature and character of the agreement which the defendant entered into between himself and his assignee. The original obligee in the bond remained liable upon his original promise, and the holder of the bond could at any time prosecute him in an action at law, for the purpose of securing payment of the debt. Carman's promise to pay the debt of his grantor simply gave to the holder of the bond an additional remedy, it being the promise of a person, theretofore a stranger to the contract, to pay the debt of another, which the creditor could enforce.

As the bill of exceptions is prepared, and the case presented to us, the charge of the learned judge was in effect a direction to the jury to find a verdict for the defendant. As we have reached the conclusion that this ruling was erroneous, the judgment and the order denying a new trial are reversed, and a new trial granted with costs to abide the event.

Present — SMITH, P. J., HARDIN and BARKER, JJ.

Judgment and order reversed and a new trial ordered, costs to abide event.